IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————————

No. 91-5086

————————————————————

MITCHELL LOWERY,

Petitioner-Appellant,

versus

JAMES COLLINS, Director, Texas Department
of Criminal Justice, Institutional Division,

Respondent-Appellee.

————————————————————————————

Appeal from the United States District Court
for the Eastern District of Texas

————————————————————————————

ON SUGGESTION FOR REHEARING EN BANC

(Opinion April 7, 1993, 5 Cir.,1993, 988 F.2d 1364)

Before WIENER, BARKSDALE, and DeMOSS, Circuit Judges.

WIENER, Circuit Judge:

Treating the Suggestion for Rehearing En Banc as a petition for panel rehearing, it is ordered that the petition for panel rehearing is DENIED. No member of the panel nor Judge[*] in regular active service of this Court having requested that the Court be polled on rehearing en banc,[1] the Suggestion for Rehearing En Banc is DENIED.

In conjunction with our denial of the State's Suggestion, we offer the following additional words of explanation on two points.

————————————

[*] Judge King did not participate in the consideration of the suggestion for rehearing en banc.

[1] See FED. R. APP. P. 35; 5th Cir. Loc. R. 35.

First, in its Suggestion, the State asserts that this panel's decision in the instant case is contrary to our prior opinion in United States v. Stephens.[2] Disagreeing, we write today to attempt once again to explain to counsel for the State why there is an unwaived Sixth Amendment violation in the instant case. Second, we write to revisit our opinion in light of the Supreme Court's recent decision in Brecht v. Abrahamson.[3] Issued two weeks after the panel opinion, Brecht affects the reasoning in parts II.B. and II.C. of our opinion but not its result.

I

The Sixth Amendment Violation and the State's Waiver Argument

The State continues to argue that Lowery waived his Sixth Amendment rights by not calling the child-complainant to the stand. To bolster this argument, the State cites to several places in the trial record demonstrating that the court explicitly informed Lowery's attorney that the child-complainant was available to testify, and that he could be called to the stand. The State notes that each time Lowery's attorney was thus informed, he chose not to call the boy as a witness. In continuing its dogged insistence that such action constitutes waiver, the State is simply refusing to accept both the ruling of the Texas Court of Criminal Appeals (TCCA) in Long v. State,[4] and this panel's determination that

     forcing a defendant to call a child complainant to

---

[2] 609 F.2d 230 (5th Cir. 1980).

[3] 113 S. Ct. 1710 (Apr. 21, 1993).

[4] 742 S.W.2d 302 (Tex. Ct. Crim. App. 1987).

2

testify in order to cross-examine that individual creates a risk of inflaming the jury against a criminal defendant and also unfairly requires a defendant to choose between his right to cross-examine a complaining witness and his right to rely on the State's burden of proof in a criminal case.[5]

The State cites several cases that it insists stand for the proposition that, as a defendant can waive his or her Sixth Amendment rights, a witness's physical presence in the courtroom assures the defendant of all the opportunity to confront the witnesses against him that the Sixth Amendment provides. As counsel for Lowery correctly points out, however, the cases cited by the State do not support that contention. Rather, they stand for the proposition that the Sixth Amendment is complied with when the prosecution calls the witness first, and then the defendant, for tactical or other reasons, voluntarily limits or chooses to forego cross-examination.[6] The first step))the prosecution's initial call for the witness to testify))is crucial to the instant inquiry. Only when that is done does the failure of the defense to cross-examine the witness constitute a waiver.

The State argues that, given the choice discussed above, Lowery's decision to not call the boy was a waiver of his Sixth

---

[5] 988 F.2d at 1368 (quoting the TCCA's Lowrey decision, 757 S.W.2d at 358-59, which was discussing Long).

[6] See United States v. Wright, 904 F.2d 403, 405-06 (8th Cir. 1990)(holding that no Sixth Amendment violation occurred when defendants declined (for tactical reasons) to cross-examine witnesses who were called by the prosecution); United States v. Howard, 751 F.2d 336, 338 (10th Cir. 1984)(same), cert. denied, 472 U.S. 1030 (1985); United States v. Hines, 696 F.2d 722, 731 (10th Cir. 1982)(same); United States v. Zurosky, 614 F.2d 779, 792-93 (1st Cir. 1979)(same); United States v. Richman, 600 F.2d 286, 299 (1st Cir. 1979).

Amendment confrontational rights. The choice put to Lowery, however, was a constitutionally unacceptable Catch 22. Assuming that the State is correct in insisting that Lowery's attorney recognized that the trial court was committing error by forcing the defendant to choose between his Sixth Amendment rights and Fifth and Fourteenth Amendment due process right to require the State to bear its burden of proof, we still cannot accept that Lowery must be penalized for doing exactly what he should have done))objecting to the admission of the videotape.[7]

As noted, the State asserts that our panel decision is contrary to this court's decision in Stephens, which held that

> counsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy.[8]

The State badly misapprehends the materiality of the factual distinction between Stephens and the instant case. In Stephens the defendant's attorney "stipulat[ed] to the admission of [the contested] evidence"; in the instant case, Lowery's attorney objected to the admission of the contested evidence. The factual distinction between the two cases eschews any potential application of the Stephens decision to the instant case.

_____

[7] Also eschewing the State's claim of waiver are the several general objections, reflected in the record, made by counsel for Lowery, clearly preserving rather than waiving his right to assert the constitutional error of admitting the videotape, and without succumbing to the State's attempt to induce Lowery to call the youth for direct examination.

[8] 609 F.2d at 232-33.

II

## The Effect of Brecht v. Abrahamson

In our panel decision, we applied the harmless beyond a reasonable doubt analysis set forth in Chapman v. California,[9] finding that the admission of the videotaped interview was harmful error under that standard. Since 1967, Chapman has supplied the appellate test))both on direct appeal and habeas corpus review))for harmlessness of constitutional errors in state criminal trials. In Brecht, which as noted above was handed down two weeks after our panel opinion was issued, the Supreme Court retracted its Chapman analysis for purposes of habeas review in favor of the harmless error standard originally espoused forty-six years ago in Kotteakos v. United States,[10] leaving Chapman in place for direct appeals. The venerable Kotteakos test requires reversal if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'"[11]

When we test the facts of the instant case under Kotteakos, we invariably reach the same conclusion that we did when we applied the Chapman standard. Admission of the videotape was harmful error under both standards.

Justice Stevens, in his concurring opinion in Brecht, wrote to explicate the Kotteakos standard and to "emphasize that the

---

[9] 386 U.S. 18, 24 (1967).

[10] 328 U.S. 750 (1946).

[11] Id. at 776.

5

standard is appropriately demanding."[12]  Under <u>Kotteakos</u>, "the burden of sustaining a verdict by demonstrating that the error was harmless rests on the prosecution" unless that "error is merely 'technical'"))which a constitutional violation could never be.[13]

As applied by the Court in <u>Brecht</u>, <u>Kotteakos</u> commands that, in determining whether a constitutional error is harmless, a de novo review of the entire trial record must be performed by the reviewing court.  In performing that review,

> [t]he habeas court cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place.  <u>Kotteakos</u> is full of warnings to avoid that result.  It requires a reviewing court to decide that "the error did not influence the jury," and that "the judgment was not substantially swayed by the error."[14]

For purposes of the State's Suggestion for Rehearing En Banc, we have followed the <u>Brecht</u> cum <u>Kotteakos</u> mandate and reviewed again the evidence presented at Lowery's trial.  As a result of

---

[12] <u>Id.</u> at 1723-24 (Stevens, J., concurring).

[13] <u>Id.</u>

[14] <u>Id.</u> at 1724 (Stevens, J., concurring).  Justice Stevens included a long quote from the <u>Kotteakos</u> opinion to remind the lower courts that, under <u>Kotteakos</u>, the question is <u>not</u>
> were they [the jurors] right in their judgment, regardless of the error or its effect upon the verdict.  It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.  The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.
>     This must take account of what error meant to them, not singled out and standing alone, but in relation to all else that happened.  And one must judge others' reactions not by his own, but with allowance for how others <u>might</u> react and not be regarded generally as acting without reason.  This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.
<u>Id.</u> (quoting <u>Kotteakos</u>, 328 U.S. at 764).

6

this painstaking re-review, we are convinced beyond peradventure that the erroneous admission of the videotaped interview "had substantial and injurious effect in determining the jury's verdict."[15]  We noted in our panel opinion and we reiterate here that the State failed to introduce any non-hearsay, direct evidence of Lowery's guilt other than the videotaped interview))one that reveals a little boy describing in innocent yet prurient detail those acts of molestation that he indicates were perpetrated upon him by Lowery.  Our post-Brecht review of the entire record only reinforces our firm conclusion that the playing of the videotape to the jury was substantially injurious to Lowery, mandating reversal under Kotteakos just as it did under Chapman.  This conclusion is buttressed now as it was prior to Brecht by a comparison of the videotaped interview and "the only other basis for the conviction: physical evidence not tied to the defendant except by hearsay testimony."[16]

## III

## Conclusion

We find that Lowery did not waive his Sixth Amendment rights by declining to call the child-complainant as a witness after the State played a videotaped interview of that child describing the acts of sexual molestation but did not call him as a witness. Also, from our review of the trial record, we have determined that the constitutional error which occurred in the trial of this case

---

[15] Kotteakos, 328 U.S. at 776.

[16] 988 F.2d at 1373.

had a "substantial and injurious effect or influence in determining the jury's verdict."  Thus, the result we originally reached on appeal of this case stands, for it continues to meet muster under the Supreme Court's new application of <u>Kotteakos</u> for cases such as this, just as it did, pre-<u>Brecht</u>, under the test of <u>Chapman</u>.