84 P.3d 859 (2004)
151 Wash.2d 1
In the Matter of the PERSONAL RESTRAINT Petition OF Vincent Peter GRASSO, Petitioner.
No. 72588-8.
Supreme Court of Washington, En Banc.
Argued May 22, 2003.
Decided February 5, 2004.
*862 Suzanne Elliott, Seattle, for Petitioner.
James Krider, Snohomish County Prosecutor, Mary Webber, Deputy, Everett, for Respondent. *860
*861 OWENS, J.
Vincent Grasso was convicted of first degree child rape and first degree child molestation in 1994. The victim, Grasso's five year old daughter, R.G., took the stand at his trial. In his personal restraint petition, Grasso argues that because the prosecutor gave R.G. permission to answer some questions with "I don't want to talk about it," R.G. did not "testify" within the meaning of the child hearsay statute, and admission of her hearsay statements violated his right of confrontation. We hold that Grasso's petition is not procedurally barred and the prosecutor's instruction was indeed improper. Yet, setting aside the interchanges where R.G. answered, "I don't want to talk about it," the remainder of her testimony was sufficient to support admission of most of her hearsay statements. The remaining hearsay statements were admissible on alternative grounds. Thus, we hold that the improper instruction did not result in actual or substantial prejudice and we deny the petition.

FACTS
In April 1993, R.G. was living with her aunt, Tucker Copple. Copple and a friend found R.G. and their other young children engaging in sexualized play. As a result, Copple asked R.G. if she had ever been touched on her "private parts." IV Verbatim Report of Proceedings (VRP) at 543. Initially, R.G. answered, "No." Id. After Copple reassured R.G. that she was not in trouble, R.G. began crying and answered, "Yes." Id. When Copple asked who touched her, R.G. answered, "My dad." Id.
On May 4, 1993, Elaine Metz, a child interview specialist, interviewed R.G. Metz knew only R.G.'s name, her age, and the type of charge involved. On a drawing of a child, R.G. marked the places where her dad had touched her, and told Metz that her father had touched her on six occasions under her clothes. She indicated that her dad had touched her chest and rubbed her vaginal area, and that he had inserted his hand inside her vagina and rectum. R.G. stated that she was three when her dad first touched her in this way.
On June 3, 1993, Jean Bourget, a pediatric nurse practitioner, examined R.G. R.G. told Bourget that her dad had touched her front private part once with his hands and it hurt. Bourget's colposcopic exam revealed that R.G. had an unusually large hymenal opening and a notch in her hymenal tissue, symptoms that are diagnostic of sexual abuse.
The State charged Grasso with one count of first degree rape of a child and one count of first degree child molestation. Before trial, the court conducted a child hearsay hearing pursuant to RCW 9A.44.120, under which a statement made by a child when under the age of 10, describing any act of sexual contact performed on the child by another, is admissible if the court finds (1) sufficient indicia of reliability and (2) the child either (a) testifies or (b) is unavailable, but there is other corroborative evidence of the abuse. Judge Gerald L. Knight admitted the statements R.G. made to Metz and Bourget pursuant to the statute. Although he initially excluded the disclosure to Copple, Judge Knight eventually ruled that the defense had opened the door to admission of those statements. Despite difficulty getting her to take the stand, R.G. testified at trial but denied her dad had abused her. The trial ended with a hung jury.
Before Grasso's second trial, R.G. made additional statements about the abuse in the course of therapy with Kathy Keating-Harvey. *863 On January 20, 1994, when asked about bad touches, R.G. responded, "like when ... dad touched my privates." 5 VRP at 691.[1] Again on February 10, when asked to name a bad part about someone she loves, R.G. responded, "My dad touching my privates, but I still love him." 5 VRP at 696. Finally, on April 14, in a "Book about me" R.G. wrote that "Vincent" was someone she did not like to have touch her. 5 VRP at 697-99. When talking about the book, R.G. stated that she did not remember exactly how her dad had touched her but that he had touched her privates. She also explained that her dad said it did not happen, but it really did, and she remembered telling her aunt about it.
Before the second trial, the new trial judge (Judge Anita L. Farris) also held a child hearsay hearing. Judge Farris found that R.G. was available to testify, and R.G.'s statements to Keating-Harvey were sufficiently reliable to satisfy RCW 9A.44.120(1). See State v. Ryan, 103 Wash.2d 165, 175-76, 691 P.2d 197 (1984). Following the law of the case, she also admitted R.G.'s statements to Metz and Bourget under RCW 9A.44.120. Even though Judge Knight had initially ruled that R.G.'s statements to Copple were inadmissible, Grasso stipulated to their admission, presumably for the purpose of arguing that Copple was suggestive in her questioning of R.G. Thus, R.G.'s statements to Copple were admitted as stipulated, and the statements to Metz, Bourget, and Keating-Harvey were admissible pursuant to RCW 9A.44.120, so long as R.G. testified. Finally, Judge Farris found that if R.G. were to become unavailable, the hearsay statements would still be admissible because the physical evidence of abuse provided corroboration sufficient to meet the requirements of RCW 9A.44.120(2)(b). However, R.G. was never found to be unavailable.
R.G. took the stand at the second trial and the prosecutor instructed R.G. that if she did not know the answer to a question, she should answer, "I don't know," if she could not remember, she should answer, "I don't remember," and if she did not want to talk about it, she could answer, "I don't want to talk about it." 5 VRP at 630. During direct examination, R.G. answered, "I don't want to talk about it," when asked if she knew why she did not live with her dad anymore, 5 VRP at 633, if she knew where her private parts were, 5 VRP at 635, and who it was that touched her in a bad way, 5 VRP at 639. R.G. also replied, "I don't want to talk about it," when asked, "Do you remember telling the doctor that your dad touched you in a bad way?"[2] 5 VRP at 636, and "does Kathy ever ask any questions about your dad?" 5 VRP at 633-34.
However, when the prosecutor asked whether anyone had ever touched her privates in a way she did not like, R.G. answered, "I can't remember." 5 VRP at 636. The prosecutor inquired further, "You can't remember or you don't want to talk about it?" and R.G. answered, "I can't remember." 5 VRP at 636. When asked whether she was telling the truth when she told the doctor about her dad, R.G. answered, "Yeah." 5 VRP at 636. R.G. stated that she did not remember the meeting with Elaine Metz. Finally, the prosecutor asked general questions about what activities R.G. did with Kathy Keating-Harvey, to which R.G. answered, "I can't remember." 5 VRP at 631.
On cross-examination, R.G. affirmed that she did not know why she could no longer see her father. She also admitted that she had previously recanted, once in an interview with defense counsel and once in court, and she stated that those recantations were truthful. Finally, defense counsel asked, "Your daddy didn't touch you in the private parts, did he?" and R.G. stated that she could not remember. 5 VRP at 645. Notably, R.G. never answered, "I don't want to talk about it" to any questions asked on cross-examination.
All of the hearsay statements discussed above were admitted, and R.G.'s testimony and her hearsay statements were the only evidence connecting Grasso to the abuse. *864 The jury convicted Grasso and the Court of Appeals affirmed. This court denied review and the Court of Appeals issued a mandate on October 23, 1997.
Grasso filed his first personal restraint petition alleging confrontation clause violations on November 6, 1998, a few days after the statutory one-year time limit. See RCW 10.73.090(1). That petition was dismissed. Grasso filed his third personal restraint petition in this court in December 2001, claiming again that the admission of R.G.'s hearsay statements violated his right of confrontation and RCW 9A.44.120. The commissioner transferred the petition to the Court of Appeals where the acting chief judge dismissed the petition as both untimely and successive. Grasso filed a motion for discretionary review, which this court granted.

ISSUES
A. Is Grasso's personal restraint petition procedurally barred?
B. Did admission of R.G.'s child hearsay statements violate Grasso's right of confrontation?
C. If so, did actual and substantial prejudice result?

ANALYSIS
A personal restraint petition is not a substitute for direct appeal and availability of collateral relief is limited. In re Pers. Restraint of St. Pierre, 118 Wash.2d 321, 328-29, 823 P.2d 492 (1992). In order to obtain relief, Grasso must first overcome statutory and rule based procedural bars. See, e.g., RCW 10.73.090, .140; RAP 16.4(d). Then, in order to successfully argue a claim not previously raised, Grasso must demonstrate by a preponderance of the evidence either a constitutional error that worked to his actual and substantial prejudice, or a nonconstitutional error that constitutes a fundamental defect inherently resulting in a complete miscarriage of justice. St. Pierre, 118 Wash.2d at 328, 823 P.2d 492; In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990).

A. Procedural Issues
Grasso concedes that his petition was filed more than one year after the mandate ended his direct appeal. See RCW 10.73.090(1). However, the one-year time limit for collateral attack does not apply to a petition that is based solely on the grounds that there has been a significant change in the law, which is material to the conviction, so long as sufficient reasons exist to retroactively apply the changed legal standard. RCW 10.73.100(6); see also In re Pers. Restraint of Benn, 134 Wash.2d 868, 940, 952 P.2d 116 (1998) (requiring a decisional change in the law to be retroactive in order to overcome the time bar).
"[W]here an intervening opinion has effectively overturned a prior appellate decision that was originally determinative of a material issue, the intervening opinion constitutes a `significant change in the law.'" In re Pers. Restraint of Greening, 141 Wash.2d 687, 697, 9 P.3d 206 (2000). Prior to State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697 (1997), State v. Borland, 57 Wash.App. 7, 786 P.2d 810 (1990), was the only decision addressing the RCW 9A.44.120(2)(a) "testifies" requirement. The Borland court held that the requirement is satisfied when the child is "both competent and physically available," regardless of whether she actually testifies. Borland, 57 Wash.App. at 13, 786 P.2d 810.
The Rohrich court "disapproved" Borland and redefined the word "testifies" as used in RCW 9A.44.120(2)(a). Rohrich, 132 Wash.2d at 481-82 n. 16, 939 P.2d 697. Because "[t]he Legislature intended the child hearsay statute to be constitutional and `carefully drafted [it] to avoid any confrontation clause problems,'" the Rohrich court interpreted the statutory language "in light of the requirements of the Confrontation Clause." Id. at 476, 939 P.2d 697 (quoting Judy Yun, Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, 83 COLUM. L.REV. 1745, 1766 (1983)). In doing so, the Rohrich court concluded that "`testifies,' as used in RCW 9A.44.120(2)(a), means the child takes the stand and describes the acts of sexual contact alleged in the hearsay." Id. at 480-81, 939 P.2d 697. This change in the law is material to Grasso's conviction because *865 under Borland R.G. testified, but under Rohrich she did not.[3] Thus, a significant, material change in the law occurred.
The State argues that, even so, the new rule announced in Rohrich should not be applied retroactively to Grasso's case. Yet, "where a statute has been construed by the highest court of the state, the court's construction is deemed to be what the statute has meant since its enactment. In other words, there is no question of retroactivity." State v. Moen, 129 Wash.2d 535, 538, 919 P.2d 69 (1996). Moreover, to the extent that Rohrich is based on constitutional principles, "[a] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." St. Pierre, 118 Wash.2d at 326, 823 P.2d 492 (emphasis added). On direct appeal, this court denied Grasso's petition for review on May 6, 1997. State v. Grasso, 131 Wash.2d 1021, 937 P.2d 1102 (1997). The Rohrich decision was filed on July 3, 1997. Division One of the Court of Appeals issued the mandate in Grasso's case on October 23, 1997.[4] Because we consider the date of the mandate to be the date of finality in this case, the Rohrich decision occurred before Grasso's direct review was final. See RCW 10.73.090(3)(b); RAP 12.7(b). Thus, Rohrich is a significant, material, retroactive change in the law, the RCW 10.73.100(6) exemption applies, and Grasso's petition is not time barred.
The State raises two additional procedural arguments that merit comment. First, because the State concedes that the merits of Grasso's confrontation clause argument have never been addressed, this petition is not successive under RAP 16.4(d). Greening, 141 Wash.2d at 698-99, 9 P.3d 206 (requiring RAP 16.4(d) dismissal where an issue has been "`previously heard and determined' on the merits" (quoting In re Pers. Restraint of Jeffries, 114 Wash.2d 485, 488, 789 P.2d 731(1990))). Second, the State contends that the petitioner cannot mount a challenge based on statutory interpretation because defense counsel did not object at trial on statutory grounds. However, the Cook court noted that when the right at issue is protected by statute, but is closely akin to a fundamental constitutional right, the court may review a newly raised, statute based claim of error. Cook, 114 Wash.2d at 812-13, 792 P.2d 506. The right protected by the "testifies" requirement is fundamentally constitutional in nature. Because the confrontation clause provides a baseline measure of protection, if the confrontation clause was violated in this case, then the statute was necessarily violated also. The statutory language cannot be properly interpreted without looking to the confrontation clause.[5]See Rohrich, 132 Wash.2d at 476, 939 P.2d 697. Thus, collateral review of the issue is proper, even if it involves reference to the statute. See Cook, 114 Wash.2d at 812, 792 P.2d 506.

B. Confrontation Clause
"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. The central issue here is whether a defendant's right of confrontation is violated where a child victim's *866 hearsay descriptions of sexual abuse are admitted, but the child does not describe the alleged acts or acknowledge some of the hearsay statements on the stand. In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the United States Supreme Court recognized, "there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." Id. at 158, 90 S.Ct. 1930. Thus, we must determine whether R.G. testified at trial such that Grasso had an opportunity for full and effective cross-examination.
In Rohrich, this court concluded that "a child does not `testify' ... when she does not give testimony describing the acts of sexual contact alleged in the hearsay." Rohrich, 132 Wash.2d at 474, 939 P.2d 697. In that case, the nine year old victim had disclosed the alleged abuse to her mother, a police officer, a counselor, and a psychologist. Id. The child was found competent to testify, yet when the child took the stand at trial, the prosecutor asked her only innocuous questions and the child was not cross-examined. Id. The child's hearsay statements were admitted and the defendant was convicted solely on the basis of those hearsay statements. Id. at 474-75, 939 P.2d 697.
The Rohrich court recognized that the opportunity to cross-examine means more than simply the opportunity to hail the witness into court; "the State [must] elicit the damaging testimony from the witness." Id. at 478, 939 P.2d 697. A failure to do so "puts the defendant in `a constitutionally [unacceptable] Catch 22'" of eliciting the damaging testimony himself or waiving his confrontation rights. Id. (quoting Lowery v. Collins, 996 F.2d 770, 771-72 (5th Cir.1993)).
In State v. Clark, 139 Wash.2d 152, 985 P.2d 377 (1999), this court clarified the limits of the Rohrich rule. In Clark, the victim testified about the alleged abuse at the hearsay hearing, and the trial judge admitted statements that the child had made to a school interventionist and a child interviewer. Id. at 154-55, 985 P.2d 377. But during direct-examination at trial, the victim recanted. Id. at 155, 985 P.2d 377. On cross-examination, she explained that she had accused Clark because he had left her family without a phone or a car. Id. Even so, the defendant's confession and the child's hearsay statements convinced the jury that Clark was guilty beyond a reasonable doubt. Id. at 153, 985 P.2d 377.
The Clark court discussed United States v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), and Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. Clark, 139 Wash.2d at 158-59, 985 P.2d 377. In Owens, an assault victim had identified the defendant as his attacker in an interview. Id. at 158, 985 P.2d 377. Yet, as a result of the injuries he sustained, at trial the victim remembered identifying his attacker, but he could not remember seeing the defendant at the time of the assault. Id. The Court held that admission of the victim's interview statement did not violate the confrontation clause because the victim testified in court that he could not remember the basis for that statement, and the defense had full opportunity to emphasize his memory loss on cross-examination. Owens, 484 U.S. at 559-60, 108 S.Ct. 838 ("`[T]he Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"" (quoting Kentucky v. Stincer, 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987))). Therefore, the "`traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness'[s] demeanor'" were all still effective. Clark, 139 Wash.2d at 158, 985 P.2d 377 (quoting Owens, 484 U.S. at 560, 108 S.Ct. 838). Similarly, in Green, the Court evaluated the admission of a witness's prior hearsay statement, which was inconsistent with his testimony at trial. Id. The Court held that the confrontation clause was not violated because the defendant had a full opportunity to cross-examine the witness. Id. The Clark court concluded that "[U]nder Owens and Green the admission of hearsay statements will not violate the confrontation clause if the hearsay declarant is a witness at trial, is asked about the event and the hearsay statement, and *867 the defendant is provided an opportunity for full cross-examination." Id. at 159 (emphasis added).
Clark argued that Rohrich required the child witness to describe the acts alleged in the hearsay statements at trial, but the Clark court distinguished Rohrich on the facts. Id. at 159-61, 985 P.2d 377. In Rohrich, the confrontation clause's "preference for live testimony [was] thwarted" because the child was not asked about the hearsay statement or the abuse. Id. at 161, 985 P.2d 377. In Clark, the State asked the witness about the alleged abuse and she denied that it had occurred; the State asked about the hearsay statements and the witness acknowledged making them, but claimed she had lied. Id. "The state did not seek to shield [her] from difficult questions nor was she evasive in her answers." Id. The defense had full opportunity to cross-examine; in fact, the child was "the best witness for the defense." Id. at 159, 985 P.2d 377. Thus, the Clark court limited the Rohrich holding to circumstances where the State shielded the child from testifying and held that Clark's right of confrontation was not violated. Id. at 159, 161, 985 P.2d 377.
This case falls somewhere between Rohrich and Clark. Although R.G. was questioned about the alleged abuse, the prosecutor provided her with a means to avoid the most difficult questions when he told her she could answer, "I don't want to talk about it." 5 VRP at 630. The Rohrich and Clark courts agreed that shielding the child from difficult questions does not provide for adequate testimony under the confrontation clause. Clark, 139 Wash.2d at 161, 985 P.2d 377.[6] Therefore, any exchanges in which R.G. answered, "I don't want to talk about it" cannot be relied upon to support admission of her prior statements.
Grasso contends that R.G.'s entire testimony was tainted by the prosecutor's instruction. However, the prosecutor told R.G. to distinguish between questions to which she did not know the answer and questions she wanted to avoid, and he was careful to clarify which response R.G. intended. Most importantly, R.G. did not answer, "I don't want to talk about it" to any of the questions posed on cross-examination. Thus, only those interchanges in which R.G. responded, "I don't want to talk about it" must be excluded from consideration.
R.G.'s remaining direct testimony falls squarely within the parameters of Clark. "Under Owens and Green the admission of hearsay statements will not violate the confrontation clause if the hearsay declarant is a witness at trial, is asked about the event and the hearsay statement, and the defendant is provided an opportunity for full cross-examination." Id. at 159, 985 P.2d 377.[7] R.G. was asked on both direct and cross-examination about the charged events, and she answered, "I can't remember," 5 VRP at 636, 645, a constitutionally acceptable response.[8]Owens, 484 U.S. at 559, 108 S.Ct. 838. R.G. affirmed that she was telling the truth when she talked to Bourget about her dad,[9] and she could not remember the interview with *868 Metz.[10] In contrast, when R.G. was asked specifically about her disclosures to Keating-Harvey, R.G. answered only "I don't want to talk about it." 5 VRP at 633-34. Thus, R.G.'s testimony supported the admission of her statements to Metz and Bourget,[11] but not her statements to Keating-Harvey.
Grasso also enjoyed the opportunity for full cross-examination about the alleged events and about R.G.'s statements to Metz and Bourget. R.G. admitted that she had recanted on two prior occasions, and when asked if she was telling the truth in each instance, R.G. responded, "Yeah." 5 VRP at 644-45. Furthermore, direct examination made the jury sufficiently aware of R.G.'s hearsay statements to Metz and Bourget such that nothing prevented defense counsel from cross-examining R.G. about the truth of these statements or her lack of memory of the details. Therefore, Grasso enjoyed the traditional protections of the confrontation clause: (1) R.G. was under oath, (2) defense counsel effectively cross-examined R.G. about the charged events and nothing prevented him from cross-examining her about the hearsay statements to Metz and Bourget, and (3) the jury witnessed R.G.'s demeanor throughout. See Owens, 484 U.S. at 560, 108 S.Ct. 838.
We recognize that the State properly asked R.G. about the alleged events and her statements to Metz and Bourget. Grasso had the opportunity to fully cross-examine her about the statements and the underlying events. Therefore, those statements were properly admitted pursuant to RCW 9A.44.120. Only the statements that R.G. made to Keating-Harvey were improperly admitted as child hearsay.[12]

C. Actual and Substantial Prejudice
To prevail, Grasso must show that the prosecutor's improper instruction to R.G. more likely than not resulted in actual or substantial prejudice. In re Pers. Restraint of Gentry, 137 Wash.2d 378, 409, 972 P.2d 1250 (1999). If the improperly admitted hearsay statements made to Keating-Harvey were admissible on alternative grounds, then no actual and substantial prejudice resulted. See State v. Butler, 53 Wash.App. 214, 217, 766 P.2d 505 (1989) (admission of evidence on incorrect basis does not constitute error if a proper basis existed for admission). The State argues that Keating-Harvey's testimony was alternatively admissible under the medical treatment exception to the hearsay rule, a firmly rooted hearsay exception. ER 803(a)(4); White v. Illinois, 502 U.S. 346, 355 n. 8, 357, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).
Although the confrontation clause and hearsay rules protect similar values, a violation of the confrontation clause may occur, and result in prejudice, even if a hearsay statement is admissible under a hearsay exception. Green, 399 U.S. at 155-56, 90 S.Ct. 1930. However, the United States Supreme Court has held that the confrontation clause is not violated "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule." White, 502 U.S. at 356, 112 S.Ct. 736. A statement admitted under a firmly rooted hearsay exception *869 satisfies the confrontation clause because it "is so trustworthy that adversarial testing can be expected to add little to its reliability." Id. at 357, 112 S.Ct. 736. The hearsay exception for medical treatment is a firmly rooted hearsay exception and hearsay statements admitted under it do not violate the confrontation clause. Therefore, the medical treatment exception is a valid alternative grounds for admitting Keating-Harvey's testimony.
Statements to therapists can be admitted pursuant to ER 803(a)(4). See, e.g., State v. Ackerman, 90 Wash.App. 477, 482, 953 P.2d 816 (1998). The medical treatment exception applies to statements only insofar as they were "reasonably pertinent to diagnosis or treatment." ER 803(a)(4); State v. Woods, 143 Wash.2d 561, 602, 23 P.3d 1046, cert. denied, 534 U.S. 964, 122 S.Ct. 374, 151 L.Ed.2d 285 (2001).
Generally, to establish reasonable pertinence (1) the declarant's motive in making the statement must be to promote treatment, and (2) the medical professional must have reasonably relied on the statement for purposes of treatment. Butler, 53 Wash. App. at 220, 766 P.2d 505 (adopting the Renville test, United States v. Renville, 779 F.2d 430, 436 (8th Cir.1985)). Yet, Washington courts have recognized that "it is not per se a requirement that the child victim understand that his or her statement was needed for treatment if the statement has other indicia of reliability." State v. Ashcraft, 71 Wash. App. 444, 457, 859 P.2d 60 (1993) (distinguishing Renville); see also State v. Kilgore, 107 Wash.App. 160, 183, 26 P.3d 308 (2001), aff'd, 147 Wash.2d 288, 53 P.3d 974 (2002); State v. Florczak, 76 Wash.App. 55, 65, 882 P.2d 199 (1994). If corroborating evidence supports the hearsay statement of a very young child, and it appears unlikely that the child would have fabricated the cause of the injury, then the statement can be admitted under the medical treatment exception, even without evidence that the child understood the purpose of her statements. Florczak, 76 Wash.App. at 64-65, 882 P.2d 199; see also Kilgore, 107 Wash.App. at 183, 26 P.3d 308. But see State v. Carol M.D., 89 Wash.App. 77, 87, 948 P.2d 837 (1997) (holding that the nine year old victim was not too young to understand the importance of being truthful with her therapist), withdrawn in part, 97 Wash.App. 355, 983 P.2d 1165 (1999). Here, Judge Farris found that R.G.'s statements to Keating-Harvey were both reliable and corroborated. Thus, R.G. need not have understood that her statements to Keating-Harvey were made for the purposes of furthering her treatment.
Because a medical professional or therapist must be attentive to treating both the physical and the emotional injuries that result from child abuse, a child's statements as to the identity of a closely related abuser are also of the type relied upon in determining proper treatment. Butler, 53 Wash. App. at 221, 766 P.2d 505 (satisfying Renville's second prong). Keating-Harvey's purpose in counseling R.G. was to help her "work through and express feelings about the touching," 1 VRP at 17, and Keating-Harvey certainly relied on R.G.'s descriptions of the touching in determining the best course for treatment. Thus, R.G.'s statements to Keating-Harvey were independently admissible under ER 803(a)(4).
In sum, R.G.'s statements to Copple were properly admitted by stipulation, and R.G.'s statements to Metz and Bourget were properly admitted under the child hearsay statute. R.G.'s statements to Keating-Harvey were alternatively admissible under ER 803(a)(4). Therefore, all of R.G.'s hearsay statements were properly in evidence and no actual and substantial prejudice resulted from the prosecutor's improper instruction to R.G. on direct examination.

CONCLUSION
Grasso's petition is not procedurally barred. The prosecutor's instruction, allowing R.G. to answer, "I don't want to talk about it," amounted to shielding the witness as prohibited by Rohrich and Clark. Excluding the interchanges in which R.G. replied, "I don't want to talk about it," the remaining testimony fell squarely within the Clark rule. The only hearsay statements tainted by the prosecutor's instruction were those made to Keating-Harvey. Because *870 those statements were independently admissible under the medical hearsay exception, no actual and substantial prejudice resulted. Therefore, we deny the petition.
WE CONCUR: IRELAND and BRIDGE, JJ.
MADSEN, J. (concurring in the majority).
I agree with the majority that Vincent Grasso's petition must be denied. I write separately because I disagree with the standard that the majority applies.
Unquestionably, Mr. Grasso's petition is time barred under RCW 10.73.090(1) and must be dismissed unless his petition is based solely on one or more of the grounds specified in RCW 10.73.100. Here, Grasso cites an exception to the time bar, contending that there has been a significant change in the law that is material to his conviction. RCW 10.73.100(6). Specifically, Grasso argues that this court's decision in State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697 (1997), overruled a prior opinion of the Court of Appeals, State v. Borland, 57 Wash.App. 7, 786 P.2d 810 (1990). In Borland, the Court of Appeals construed the requirement in the child hearsay statute, RCW 9A.44.120(2)(a), that a child "testify" before the child's hearsay can be admitted in criminal proceedings. The court held that child hearsay evidence is admissible if the child is competent and physically available, regardless of whether the child actually testifies. Id. at 13, 786 P.2d 810.
In Rohrich this court disapproved Borland and concluded that "testifies," as used in RCW 9A.44.120(2)(a), means that "the child takes the stand and describes the acts of sexual contact alleged in the hearsay." Rohrich, 132 Wash.2d at 481, 939 P.2d 697. This construction, Rohrich stated, "is consistent with the Confrontation Clause and comports with legislative intent." Id. at 481, 939 P.2d 697. Thus, Rohrich is an intervening opinion overturning a prior appellate decision that originally determined the meaning of "testify" in the child hearsay statute, arguably constituting a significant change in the law material to Grasso's conviction. In re Pers. Restraint of Greening, 141 Wash.2d 687, 696, 9 P.3d 206 (2000).
Assuming that Rohrich constitutes a significant change in the law, rendering Grasso's petition timely under the exception of RCW 10.73.100(6), In re Personal Restraint Petition of Cook, 114 Wash.2d 802, 792 P.2d 506 (1990), sets forth the correct standard in Washington to be applied to his personal restraint petition. Under Cook, when a personal restraint petitioner seeks collateral relief based on a nonconstitutional issue, the petitioner must demonstrate that the alleged error constitutes a fundamental defect, which inherently results in a complete miscarriage of justice. Cook, 114 Wash.2d at 813, 792 P.2d 506. The claimed error in Grasso's case is nonconstitutional because it involves the appropriate interpretation of the child hearsay statute, not what protections are afforded under the confrontation clause.
The situation here is similar to that in Cook. There, this court recognized that a right protected by statute may be closely akin to a fundamental constitutional right. The petitioner in Cook claimed, in a second petition, that he was entitled to relief based upon this court's interpretation of RCW 10.43.040 (statutory double jeopardy). At trial the petitioner argued that his state prosecution violated double jeopardy, but he failed to claim a violation of the double jeopardy statute. Although the court recognized that the right protected by the double jeopardy statute is closely akin to a fundamental constitutional right, the court determined that Cook's petition raised a nonconstitutional error.
Here, however, the majority appears to assume that the issue before the court is whether Grasso's Sixth Amendment confrontation rights have been violated and applies Cook's constitutional error standard of "actual prejudice." This assumption is incorrect. In its discussion of the confrontation clause, Rohrich relied on well-established United States Supreme Court precedent, including White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); United *871 States v. Inadi, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) and a host of federal decisions applying that precedent. Clearly, there was no significant change in the law regarding confrontation rights announced in Rohrich. See In re Pers. Restraint of Hankerson, 149 Wash.2d 695, 703, 72 P.3d 703 (2003) (no significant new law material to defendant's case where cases relied on were well-established precedent on admissibility of codefendant's confession).
The distinction is critical to the question whether Grasso's petition is in fact time barred. If the majority has correctly identified the issue as one relating to a constitutional error then Grasso's petition is time barredend of discussion. This is so because State v. Rohrich did not announce a new interpretation of the constitutional protections afforded under the confrontation clause; it only construed the child hearsay statute to be consistent with those protections. Grasso's petition may be considered as timely only if his claim of error relates to a violation of RCW 9A.44.120(2)(a) as construed in State v. Rohrich.
Because Rohrich represents a significant change in the law only on the nonconstitutional error ground, it follows, as stated above, that the nonconstitutional standard for collateral review applies. In Cook, the court acknowledged that previous case law barred consideration of nonconstitutional claims, which could have been, but were not, advanced at trial or on appeal. Cook, 114 Wash.2d at 809, 792 P.2d 506. However, the court then rejected the automatic bar to raising nonconstitutional issues, replacing it with a requirement that the petitioner demonstrate that the error constituted a fundamental defect resulting in a complete miscarriage of justice. Such a showing, Cook observed, is stricter than the "actual prejudice" standard for constitutional error and strikes the proper balance between finality and consideration of serious nonconstitutional error. Id. at 809-11, 792 P.2d 506.
Similar to the petitioner in Cook, Grasso seeks statutory protection under the child hearsay statute, which this court has construed to be consistent with the confrontation clause. As with petitioner's claim in Cook, Grasso's claim is statutory, not constitutional. Accordingly, the standard to be applied to this petition is the stricter standard established in Cook for nonconstitutional error.
Applying this standard, the first question is whether error occurred. I agree that a violation of RCW 9A.44.120 occurred in this case. The State may not give a witness permission to refuse to testify. In order to prevail on a collateral attack, however, Grasso must establish that upholding his conviction would amount to a complete miscarriage of justice. He cannot do so. At the competency/reliability hearing conducted pretrial, Grasso stipulated to the reliability of child hearsay statements made to Tucker Copple, Elaine Metz and Jean Bourget. Further, at that hearing the trial court found the additional statement to Kathy Keating-Harvey reliable. At trial, Grasso did not object to R.G.'s testimony and did not move to strike. Rather, through his attorney, Grasso proceeded to cross-examine R.G. about the alleged sexual abuse and her statements regarding that abuse. As amply described by the majority, R.G. answered every defense question, essentially agreeing that she had denied the abuse in prior statements to defense counsel and affirming the truth of those statements of denial.
It is true, as the dissent says, that under Rohrich, responses given on cross-examination have no bearing on whether the prosecution properly conducted its direct examination under RCW 9A.44.120. Dissent at 872-73. However, collateral review changes the analysis. Grasso bears the burden of establishing a complete miscarriage of justice. Under this standard the court must view the entire record, including cross-examination. In light of the entire record, petitioner Grasso cannot meet his burden to demonstrate that upholding his conviction amounts to a complete miscarriage of justice.
FAIRHURST, J., concurs.
SANDERS, J. (dissenting).
Both the plurality and concurrence properly cross the necessary threshold to reach the merits of Vincent Grasso's personal restraint petition, holding this collateral attack is not *872 time barred by RCW 10.73.090(1) because State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697 (1997), was a significant change in the law from State v. Borland, 57 Wash.App. 7, 786 P.2d 810 (1990), thereby excusing the one year statute of limitations. See plurality at 864-66; RCW 10.73.100(6).
The concurrence, however, elects to view RCW 9A.44.120 in isolation from the confrontation clause,[1] stating Rohrich was decided solely on statutory grounds, thereby opining the petitioner must prove more than actual and substantial prejudice but also a fundamental defect which inherently results in a complete miscarriage of justice. See concurrence at 870-71. The plurality is correct when it views this as a constitutional violation because, contrary to what the concurrence opines, RCW 9A.44.120 was drafted and must be construed in light of confrontation requirements. Rohrich, 132 Wash.2d at 476, 939 P.2d 697. RCW 9A.44.120 provides the exact protection required by the confrontation clauseno more, no less. See id. Thus, Rohrich was also a decision grounded in the confrontation clause as well as RCW 9A.44.120. As the plurality correctly recognizes, "[U]nder Borland R.G. testified, but under Rohrich she did not." Plurality at 864-65. Because Rohrich was a significant change in the law on confrontation grounds as well as statutory grounds, Grasso's personal restraint petition must be considered under the actual and substantial prejudice standard. However, I would argue not only was there "actual and substantial prejudice" but that excusing the key prosecution witness from answering questions necessary to establish prima facie admissibility of otherwise inadmissible hearsay is indeed a "`fundamental defect which inherently results in the complete miscarriage of justice'" as the damning hearsay would have been rendered inadmissible. In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 867, 50 P.3d 618 (2002) (quoting In re Pers. Restraint of Fleming, 129 Wash.2d 529, 532, 919 P.2d 66 (1996)). That Grasso stipulated some of it was "reliable" does not relieve the prosecution of its confrontation clause burden to require the available child witness to "testify," which she did not.
The primary issue then, and the point where I part company with the plurality, is whether a hearsay declarant "testifies" for the purpose of the confrontation clause when she is invited to respond to relevant questions by simply stating: "I don't want to talk about it." V Verbatim Report of Proceedings (VRP) at 630. I posit she does not.
My analysis is guided by two previous decisions from this court: Rohrich, 132 Wash.2d 472, 939 P.2d 697, and State v. Clark, 139 Wash.2d 152, 985 P.2d 377 (1999). Both cases involved child hearsay.
In Rohrich the prosecutor asked only irrelevant and innocuous questions on direct, none of which concerned the alleged sexual molestation or hearsay statements. Rohrich, 132 Wash.2d at 474, 939 P.2d 697. Defense counsel had an opportunity to cross-examine but did not do so. Id. We held the prosecutor's failure to ask relevant questions violated the defendant's right to confront witnesses against him and rendered hearsay statements from the declarant inadmissible. Id. at 481-82, 939 P.2d 697.
Unlike Rohrich, in Clark the child hearsay declarant was asked relevant questions on direct about the alleged event as well as the hearsay statement itself. Clark, 139 Wash.2d at 155, 985 P.2d 377. She answered these questions directly by denying molestation had occurred, and denying the truth of her alleged hearsay declarations. Id. Under those facts we found that the confrontation clause requirements had been satisfied, distinguishing Rohrich[2] because "[t]he state did *873 not seek to shield E. from difficult questions nor was she evasive in her answers." Id. at 161, 985 P.2d 377. Relying on United States v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), and California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), we held the confrontation clause is satisfied only when "the hearsay declarant is a witness at trial, is asked about the event and the hearsay statement, and the defendant is provided an opportunity for full cross-examination." Clark, 139 Wash.2d at 159, 985 P.2d 377. The confrontation clause standard set forth in Rohrich and Clark, however, was obviously not met in the case at bar. Here the prosecutor instructed R.G. at the beginning of direct she could avoid testifying by responding, "I don't want to talk about it" whenever she felt like it. 5 VRP at 630. R.G. did just that when confronted with several questions pertinent to Grasso's guilt or innocence. Id. at 633-36. This is precisely the fact distinguishing Clark from Rohrich: the prosecution's attempt "to shield [the witness] from difficult questions." Clark, 139 Wash.2d at 161, 985 P.2d 377.
Clark unequivocally requires the prosecution to ask the declarant "about the event and the hearsay statement." Id. at 159, 985 P.2d 377 (emphasis added). The prosecution failed its burden on both grounds.
A. About the event.
R.G. evaded testimony with the "I don't want to talk about it" response to questions directed at the core of the prosecution's case. 5 VRP at 633-36. The end of the State's direct examination is most illustrative:
Q Now, [R.G.], I want to ask you one more time, and if you don't want to talk about it, just tell you me [sic]. You don't want to talk about it?
A Okay.
Q There's a lot of people that want to know what happened. I want you to tell us who it is was [sic] that touched you in a bad way.
A I don't want to talk about it.
Q Okay. Fair enough. [R.G.], I don't have any other questions. I'm done.
5 VRP at 639. Not only was the jury deprived the opportunity to hear the answer to that question, unquestionably relevant to establish Grasso's guilt or innocence, but the failure to provide a responsive answer to a question about the event undeniably violates the confrontation clause. See Clark, 139 Wash.2d at 161, 985 P.2d 377. R.G. could very easily have given an exculpatory response, one which the jury had a right to hear and rely upon, much to the prejudice of the accused.
The plurality however elects to view R.G.'s testimony through a lens of make-believe as if the "I don't want to talk about it" exchanges never happened. It cites two reasons for doing so: (1) the prosecutor gave R.G. the alternative of testifying she did not know or could not remember the answer to the question, and (2) R.G. never testified "I don't want to talk about it" to any questions posed on cross-examination. Plurality at 867-868.
The plurality hinges its conclusion primarily on the second factor. Id. ("Most importantly, R.G. did not answer, `I don't want to talk about it' to any of the questions posed on cross-examination." (first emphasis added)). But Rohrich undercuts this rationale. There we held the confrontation clause's indispensable component of cross-examination "requires the State to elicit the damaging testimony from the witness so the defendant *874 may cross-examine if he so chooses." Rohrich, 132 Wash.2d at 478, 939 P.2d 697 (emphasis added) (citations omitted). Indeed, the defense in Rohrich elected not to cross-examine the State's witness at all, yet we still found the prosecution's failure to ask pertinent questions on direct violated the defendant's rights under the confrontation clause. Id. at 474, 939 P.2d 697. Shifting the burden back to the defense to extract such damaging testimony puts the defendant in "`a constitutionally impermissible Catch-22' of calling the child for direct or waiving his confrontation rights," id. at 478, 939 P.2d 697 (quoting Lowery v. Collins, 996 F.2d 770, 771-72 (5th Cir.1993)). Therefore that R.G. never stated "I don't want to talk about it" to a question on cross-examination has no bearing whatsoever on whether the prosecution properly conducted its direct examination.
The second reason the plurality employs to accept the remainder of R.G.'s testimony is the prosecution's submitted alternatives that R.G. could respond by stating she did not know or could not remember the answer. Plurality at 867. The plurality states the prosecutor "was careful to clarify which response R.G. intended." Id. Although I would characterize the questions as more leading than clarifying, even so, these purported alternatives certainly did not mitigate the error since the jury was deprived of hearing a substantive response in lieu of "I don't want to talk about it."
B. About the hearsay.
Not only must the prosecution pose direct and relevant questions about the event, but it must also pose direct and specific questions about the alleged hearsay declarations. Failure to pose these questions to the hearsay declarant renders the hearsay inadmissible. Clark, 139 Wash.2d at 159, 985 P.2d 377.
1. Jean Bourget
The plurality holds R.G. testified about her statements to Jean Bourget[3] because R.G. "affirmed that she was telling the truth when she talked to Bourget." Plurality at 867-68. But the actual colloquy was this:
Q Do you remember telling the doctor that your dad touched you in a bad way?
A I don't want to talk about it.
. . . .
Q When you were talking to the doctor about your dad, were you telling her the truth, too?
A Yeah.
5 VRP at 636. This affirmation of truth came almost immediately after R.G. "d[idn't] want to talk about" whether she "remember[ed] telling the doctor that [her] dad touched [her] in a bad way." Id. The plurality excludes the exchange directed toward the contents of the hearsay statement but permits the exchange addressing the truthfulness of the excluded statement. Under this reasoning, a witness could properly testify about an event crucial to the prosecution's case by simply stating she had a conversation with some of her friends but never specify what was said much less what really happened. The prosecution would then admit the declarant's hearsay through one of her friends, even though the declarant never testified at trial that the subject matter of the conversation addressed the event in question.
This is insufficient under Rohrich and Clark. Because Clark requires the declarant be "asked about ... the hearsay statement," 139 Wash.2d at 159, 985 P.2d 377, it necessarily follows that she be asked about the contents of that statement to afford the defendant a meaningful opportunity for cross-examination. Accord Rohrich, 132 Wash.2d at 478, 939 P.2d 697.[4]
*875 The plurality argues this conclusion "need not be addressed" because "`I don't remember,' is a constitutionally valid response," and "if R.G. does not remember the event, it may be inferred that she does not remember the content of the event." Plurality at 867 n. 8. To the contrary this conclusion must be addressed because the second prong of Clark requires the prosecutor to ask the declarant "about ... the hearsay statement," Clark, 139 Wash.2d at 159, 985 P.2d 377, and hearsay by nature refers to the contents of an out-of-court statement.
Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). The "statement" must be an assertion, whether oral, written, or nonverbal conduct. ER 801(a). The general inadmissibility of hearsay relates to the statement's contentsnot whether the statement was made.
State v. Collins, 76 Wash.App. 496, 886 P.2d 243 (1995), is instructive. There a detective answered several telephone calls at the defendant's house; each caller had asked for "`Larry.'" Collins, 76 Wash.App. at 497, 886 P.2d 243. The court upheld the admission of the detective's testimony regarding the conversations because none of the hearsay was assertive. Id. at 498, 886 P.2d 243. Put simply, a witness can testify to whether he or she spoke with another person without violating the hearsay rule, but once the testimony leaks into the contents of the conversation, the hearsay rule generally proscribes admission, unless offered for a reason other than proving the truth of the matter asserted. See United States v. Williams, 133 F.3d 1048, 1052 (7th Cir.1998) (admission of a declarant's statements is permissible so long as the witness's testimony is "limited to the fact that he spoke to [the declarant] without disclosing the substance of that conversation"). Applying the general rules surrounding hearsay testimony, to ask a declarant "about ... the hearsay statement" as required by Clark requires questioning toward the contents of the statementnot whether the declarant ever spoke to another person.
The first question asked if R.G. remembered telling the doctor her dad touched her in a bad way. V VRP at 636. Although this was an appropriate question, the invited "I don't want to talk about it" response nullified it. The second question to R.G. only referenced talking to the doctor. A question about whether the child declarant remembered speaking to someone is no more a question "about ... the hearsay statement" than a question of what the weather was on the day the child witness was abusedwithout any reference to the abuseis a question "about the event." Clark, 139 Wash.2d at 159, 985 P.2d 377. As such, R.G. never testified about the contents of her statements to Bourget and the alleged hearsay statement to Bourget must accordingly be excluded.
2. Elaine Metz
The only reference to child interview specialist Elaine Metz during the entire examination (direct, cross, and redirect) went as follows:
Q Okay. Do you remember talking to a nice woman with black hair by the name of Elaine?
A I don't remember.
Q Okay. Before you went to the doctor, did anyone ask you about your dad?
A No, I can't remember.
V VRP at 633. Nowhere in that entire two-question-two-answer colloquy is there any reference to the contents of R.G.'s alleged hearsay statement to Metz. The prosecutor never asked about the hearsay statement to Metz. Rather, the questions only go to R.G.'s and Metz's purported relationship. R.G. never testified to the contents of her alleged statements to Metz. Consequently, that hearsay was inadmissible as well.
3. Kathy Keating-Harvey
The plurality correctly holds R.G. never testified for purposes of the confrontation clause about her incriminating hearsay statements to child therapist Kathy Keating-Harvey. Plurality at 868. However, the plurality concludes Keating-Harvey's testimony was admissible under the medical hearsay exception, ER 803(a)(4), and therefore concludes Grasso suffered no prejudice. Plurality *876 at 868-69. To support this bald conclusion the plurality cites State v. Butler, 53 Wash. App. 214, 766 P.2d 505 (1989). See plurality at 868. I disagree.
Butler held the defendant suffered no prejudice when the trial court improperly admitted a hearsay statement under the excited utterance exception, ER 803(a)(2), because the statement was independently admissible under the medical diagnosis exception, ER 803(a)(4). Butler, 53 Wash.App. at 217, 219, 766 P.2d 505. Butler may have addressed hearsay, but it did not involve a confrontation clause violation. This case does. To analyze the prejudice prong under Butler is to treat the confrontation clause as a codification of the hearsay rule, an approach squarely rejected by the United States Supreme Court. Green, 399 U.S. at 155-56, 90 S.Ct. 1930; see also Dutton v. Evans, 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (plurality opinion of Stewart, J.).
The plurality, however, concludes this analysis is appropriate because the United States Supreme Court held the medical diagnosis exception is "firmly rooted." Plurality at 868-69 (quoting White v. Illinois, 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). The Court in White so held because a patient's out-of-court declarations to his or her medical care professional "provide substantial guarantees of their trustworthiness," White, 502 U.S. at 355, 112 S.Ct. 736.
However, "in the context of child hearsay, ER 803(a)(4) is not a firmly rooted hearsay exception." State v. Florczak, 76 Wash.App. 55, 68, 882 P.2d 199 (1994); see also State v. Kilgore, 107 Wash.App. 160, 183, 26 P.3d 308 (2001) ("The medical diagnosis exception is normally a firmly rooted exception, but this is not true for statements by very young children under the alternative test in Florczak."). The court in Florczak recognized that it has only been in the last 15 years that the medical diagnosis exception has "extended in this state to include out-of-court statements to health care professionals from children too young to comprehend the purpose of the statements." Florczak, 76 Wash.App. at 69, 882 P.2d 199. Conversely, traditional medical diagnosis hearsay is firmly rooted because it dates back for more than two centuries. White, 502 U.S. at 356 n. 8, 112 S.Ct. 736. Thus, child hearsay, even if made to a medical professional, does not bear the sufficient indicia of reliability to satisfy the confrontation clause's reliability requirement. Accord Rohrich, 132 Wash.2d at 480, 939 P.2d 697 ("[N]othing about child hearsay indicates the hearsay statement would be more reliable than an in-court declaration of the same accusation."). The child declarant must therefore testify in order to admit the out-of-court statements. Id. at 481, 939 P.2d 697.
While Washington's child hearsay statute, RCW 9A.44.120, may provide more protection than the confrontation clause, it certainly does not provide less. Accord Clark, 139 Wash.2d at 157, 985 P.2d 377. Moreover, aside from the hearsay, R.G.'s substantive testimony may have exculpated the defendant had she been responsive.
As R.G. did not testify for purposes of the confrontation clause, Grasso suffered the same actual and substantial prejudice as did the defendant in Rohrich.

CONCLUSION
Though the plurality holds the prosecutor's instruction to withhold relevant testimony was improper, it denies a remedy to the accused. The initial refusal to answer precludes the fact finder from learning what she would have said if she had answered. The plurality even concedes R.G. did not testify within the meaning of RCW 9A.44.120(2)(a) and the confrontation clause as construed in Rohrich. See plurality at 865 ("[U]nder Borland R.G. testified, but under Rohrich she did not." (emphasis added)). The plurality also concedes R.G. must either testify or her hearsay statements are inadmissible. See plurality at 863. Yet in a strange turn of events the plurality recants its previous statement and asserts R.G. did in fact testify sufficiently for the court to admit the hearsay. Plurality at 867-68. Obviously she did not.
I dissent.
ALEXANDER, C.J., JOHNSON, and CHAMBERS, JJ., concur.
NOTES
[1] Because the prosecutor opened the door by questioning Keating-Harvey's methods, the trial court also admitted into evidence a videotape of the January 20 session.
[2] Although Jean Bourget is a nurse practitioner, R.G. referred to her as a doctor.
[3] The dissent believes that this statement means we concede R.G. did not testify. Dissent at 872, 876. However, Rohrich is limited by State v. Clark, 139 Wash.2d 152, 985 P.2d 377 (1999). Therefore, R.G. may have testified under the Clark standard, even if she did not testify under the Rohrich standard. See infra at 875, 876.
[4] The mandate was delayed because the Court of Appeals on remand ordered Grasso to pay costs. In June 1997, there was a motion to modify that ruling, which the Court of Appeals granted in July 1997.
[5] This is not to say that RCW 9A.44.120 may not be interpreted to offer more protection than the confrontation clause. See, e.g., State v. C.J., 148 Wash.2d 672, 686-87, 63 P.3d 765 (2003) (noting the statutory corroboration requirement, imposed where a child is unavailable, offers more protection than the confrontation clause requires). Grasso offers no sound reason for interpreting the statutory "testifies" requirement to be more protective than the confrontation clause. Moreover, this court has never recognized that the legislative history requires a more protective reading of the "testifies" requirement. See id. at 680-81, 63 P.3d 765; see also State v. Jones, 112 Wash.2d 488, 494-95, 772 P.2d 496 (1989). Finally, a search of legislative history revealed no intent to make the statutory "testifies" requirement more protective.
[6] Alternatives exist for a child who is reluctant to testify against an alleged abuser. The child may testify via closed-circuit television. RCW 9A.44.150; see also State v. Smith, 148 Wash.2d 122, 136, 59 P.3d 74 (2002) (requiring consideration of alternative means for taking a witness's testimony before resorting to unavailability). The child may also be found to be unavailable, thereby allowing admission of hearsay statements that are supported by both sufficient indicia of reliability and corroboration. RCW 9A.44.120.
[7] The witnesses in Owens and Clark acknowledged their prior hearsay statements. Owens, 484 U.S. at 556, 108 S.Ct. 838; Clark, 139 Wash.2d at 155, 985 P.2d 377. Yet, Clark requires that the witness only be asked about the hearsay statement. Id. at 159, 985 P.2d 377.
[8] The dissent argues that R.G. fails the second element of the Clark test because she was asked about the events, but R.G.'s answers lacked content. Whether "asked about" involves a content element need not be addressed here because R.G.'s answer, "I don't remember," is a constitutionally valid response. Further, if R.G. does not remember the event, it may be inferred that she does not remember the content of the event. Therefore, the second element of the Clark test is satisfied.
[9] Although R.G. replied that she did not want to talk about her visit to the doctor, she also stated that she was telling the truth when she talked to Bourget about her dad.
[10] The dissent argues that R.G. fails the second element of the Clark test because she was asked about the hearsay statements to Bourget and Metz, but R.G.'s answers lacked content. Whether "asked about" involves a content element need not be addressed here because R.G.'s answers do involve the content of the hearsay statements. R.G. testified that she was telling the truth when she spoke to Bourget about her dad, and truthfulness of a statement goes to the content of the statement. R.G. also testified that she could not remember the interview with Metz. It may be inferred that this means she did not remember the content of the interview, so R.G.'s answer does involve the content of the hearsay statement.
[11] Each hearsay statement was found to be supported by sufficient indicia of reliability, a finding not at issue here.
[12] Grasso also claims violations under the state constitution. Although five members of this court have agreed that Washington's confrontation clause offers higher protection than its federal counterpart with respect to face-to-face testimony, Smith, 148 Wash.2d at 131, 59 P.3d 74, the petitioner offers no Gunwall analysis discussing whether the state confrontation clause offers higher protection in this context. See id.; State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[1] "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI.
[2] The plurality suggests that Clark "limited" our holding in Rohrich. See plurality at 865 n. 3. Clark did not limit Rohrich at all but rather distinguished the case on its facts:

But the facts of Rohrich must be distinguished from the present case. Although in Rohrich the preference for live testimony had been thwarted by not asking the child witness about the alleged occurrence or the hearsay statement, in the present case the preference for live testimony prevailed through direct examination on both points. In Rohrich the state avoided questioning the child witness about the alleged acts, thus directly preventing the defendant from cross-examining her. However in the present case there was no such evasion: The state asked E. about the alleged acts and she answered by denying they occurred. The state also asked E. about her prior hearsay statements which she acknowledged making but claimed were lies. Far from being placed in a constitutionally impermissible Catch-22 of calling the child for direct or waiving his confrontation rights, Clark had a full opportunity to cross-examine E. about the alleged acts and about her hearsay statements. The state did not seek to shield E. from difficult questions nor was she evasive in her answers. Indeed, while Clark may view conviction notwithstanding E.'s clear testimony that her hearsay statements were lies as a miscarriage of justice, it is nevertheless not a violation of the confrontation clause.
Clark, 139 Wash.2d at 161, 985 P.2d 377. Contrary to the plurality's suggestion, we did not cut short Rohrich anywhere in that paragraph.
[3] The plurality states R.G. referred to Jean Bourget as a doctor, even though her occupation was a pediatric nurse practitioner. Plurality at 863 n. 2. Presumably, the plurality refers to the fact that Dr. Carol Baer, M.D., had never met R.G., 5 VRP at 771, and that R.G. answered affirmatively that she "remember[ed] the doctor taking a look at" her, id. at 633.
[4] The plurality criticizes this view because one could infer R.G. simply did not remember anything about the interviews with Bourget or Elaine Metz. See plurality at 867 n. 8, 868 n. 10. But that is no reason not to ask.