IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32779-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED |
| | ) | IN PART |
| SEAN JOSEPH BATES, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Our Supreme Court has long held that before offering the

testimonial out-of-court statement of a witness against a criminal defendant, "the

confrontation clause's indispensable component of cross-examination 'requires the *State*

to elicit the damaging testimony from [a] witness so the defendant may cross-examine if

he so chooses.'" *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 29, 84 P.3d 859 (2004)

(Sanders, J., dissenting) (quoting *State v. Rohrich*, 132 Wn.2d 472, 478, 939 P.2d 697

(1997)). Following the United States Supreme Court's decision in *Crawford v.*

*Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), our Supreme Court

reaffirmed *Rohrich*, holding that *Crawford* "left intact the governing case law analyzing

the sufficiency of a witness's testimony for confrontation clause purposes." *State v. Price*, 158 Wn.2d 630, 650, 146 P.3d 1183 (2006). Sean Bates appeals his conviction of two counts of first degree child rape, complaining for the first time on appeal that the State's examination of his child victim was not sufficient for confrontation clause purposes.

The rationale for requiring the State to sufficiently elicit damaging information is so the defense can cross-examine the witness about that information, whether it is contained in in-court or out-of-court statements. In a case such as this, it spares the defendant the risk of inflaming the jury if he calls a child as a direct witness. It safeguards the defendant's right to rely on the State's burden of proof in a criminal case.

In this case, the State's direct examination of the child victim was broad enough to open the door to cross-examination of all of the damaging information provided by the child victim, in court or out of court. For purposes of his confrontation clause challenge, Mr. Bates fails to demonstrate manifest constitutional error. For purposes of a related ineffective assistance of counsel argument, he fails to demonstrate any error or prejudice.

Mr. Bates does show (and the State concedes) that a community custody condition involving Internet use is not crime related, and that the trial court failed to undertake an individualized inquiry into his ability to pay discretionary legal financial obligations. For these reasons, and because Mr. Bates raises no meritorious arguments in a statement of additional grounds, we affirm his convictions and remand for resentencing.

2

FACTS AND PROCEDURAL BACKGROUND

For 18 months, Sean Bates rented the basement living area of the home of a female coworker. Her granddaughter, S.J., is the victim in this case. Evidence was presented at trial that during the time he rented the basement, Mr. Bates was a trusted friend of his coworker. She allowed S.J. and S.J.'s younger brother to go down to the basement living area to play on Mr. Bates's iPod (as long as it was okay with him) and allowed them to swim and play with Mr. Bates in the family pool.

During the charging period of September 1, 2012 to July 6, 2013, when S.J. was in the first grade and turned seven years old, Mr. Bates put his finger underneath S.J.'s clothes or bathing suit on numerous occasions to touch what she called her "front private and [her] back private"—"sometime[s on] the outside and the inside" of her privates. Report of Proceedings (RP) at 292-93.[1] Eventually, on July 6, 2013, he took her into his basement bathroom, closed the door, pulled down her pants and underwear, and holding her upside down, "licked [her] privates [on the] front and back." RP at 294. After his conduct came to light, Mr. Bates was charged with two counts of child rape in the first degree.

Following a pretrial hearing to determine whether statements about Mr. Bates's conduct that S.J. made to family and to a State child investigator would be admitted

---

[1] "RP," without a date, refers to the report of proceedings of the trial. Reports of other proceedings are identified by date.

under the child hearsay exception,[2] the court found that the statements S.J. had made to others "are reliable and will be admitted at trial." RP (June 9, 2014) at 104.

At trial, the State presented its case by first calling as witnesses several family members who had spoken with S.J. about Mr. Bates's sexual contact after it came to light on July 9, 2013. The night before S.J. disclosed his conduct, she had a sleepover at her aunt's house, with two cousins. The State's first witness was S.J.'s 8-year-old cousin, who testified that when "talking about secrets," S.J. told her that "a guy at her grandma's" had "licked her . . . private spot". RP at 37.

The State's next witness was S.J.'s 13-year-old cousin, to whom the 8-year-old cousin immediately ran to report S.J.'s "secret," with S.J. in tow. S.J. repeated what Mr. Bates had done to her to her older cousin.

The State next called S.J.'s aunt, whom the 13-year-old phoned, asking her to come over right away because it was "an emergency." RP at 54. S.J.'s aunt spoke to

---

[2] The exception, codified at RCW 9A.44.120, provides that a statement made by a child under the age of 10 describing any act of sexual contact performed with or on the child by another is admissible in evidence in criminal proceedings if the court finds, in a hearing outside the presence of the jury,

(1) . . . that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

4

S.J., who told her about what "Sean," her "[boyfriend] that lived at her grandma's house" had done to her. RP at 55. All three witnesses recounted similar reports by S.J.: that Sean, who lived at her grandma's house, had licked her "private part," or "bottom," and had once put his finger in her "butt." RP at 37, 55, 45. S.J.'s aunt called her brother—S.J.'s father—as well as the police.

Before the State called S.J. to testify at trial, it called Mari Murstig, a child interviewer with the Benton County Prosecutor's office who had conducted a videotaped interview of S.J. on July 10, the day after the allegations of molestation came to light. After questioning Ms. Murstig about her position, background, training, methods, and her interview of S.J., the prosecutor had her authenticate the videotape, which was admitted into evidence without objection. The approximately 40-minute videotape was then played for the jury. In the course of the interview, S.J. told Ms. Murstig that on the prior Saturday, Mr. Bates had pulled down her pants and underpants, hung her "upside down" and licked her private parts in her grandma's downstairs bathroom. Ex. 30 at 21 min., 7 sec. She said Mr. Bates had been about to put his "wiener" inside her when her grandma knocked on the door, and he stopped. *Id.* at 26 min., 12 sec. She told Ms. Murstig that on many occasions before that day, Mr. Bates had touched her "pee-pee" with his finger—on the couch downstairs, on the couch upstairs, and outside on the tennis court. *Id.* at 39 min., 00 sec.

5

S.J.'s parents were both called as witnesses and testified to consistent statements S.J. had made to them after they picked her up from her aunt's home on July 9. And S.J.'s grandmother testified that S.J. and her younger brother often spent time in the basement with Mr. Bates because he would let them play games on his iPod. The grandmother also recalled that she had gone looking for S.J. on July 6, the Saturday when S.J. had been molested in the basement bathroom, and had called for her in the basement in response to which Mr. Bates, and then S.J., answered "In here," from behind the closed bathroom door. Because the bathroom had an outside door to the pool area and was a preferred entrance for wet swimmers who would otherwise track water through the house, the grandmother assumed the two were just coming in from swimming.

The State called S.J. as its final witness. Almost three dozen of the prosecutor's questions related directly to Mr. Bates's sexual contact with S.J. She testified that on the Saturday in question, Mr. Bates had turned her upside down and licked her private parts, but that when her grandmother knocked on the door they put their clothes back on. She also stated Mr. Bates had touched her private parts with his hand on the downstairs couch while she was playing with his iPod on many Saturdays and Sundays. She denied that she had ever played with Mr. Bates's iPod on the tennis court. When asked if she remembered talking "to a lady about it when you colored with markers" (from the videotape, jurors would have known this was Ms. Murstig), S.J. said that she did. RP at 296. She said she had told the lady about what happened with Mr. Bates. The prosecutor

6

did not ask S.J. to tell the jury anything about the content of her interview by Ms. Murstig.

On cross-examination, defense counsel asked S.J. a number of questions about the statements she made when interviewed by Ms. Murstig. The State did not object to any of the questioning as being beyond the scope of its direct examination.

Mr. Bates testified in his own defense, denying S.J.'s allegations of sexual contact. He also called his ex-girlfriend to testify to text and voice communications they had off and on during the late afternoon and early evening of July 6. Evidence suggested that it was sometime during that time frame that the molestation in the bathroom occurred.

The jury found Mr. Bates guilty of both counts charged. He was sentenced to 144 months to life in prison. The court imposed a condition of community custody that prohibits Mr. Bates from using "a computer or electronic device capable of accessing the internet without authorization from [his] Community Corrections Officer and/or therapist." Clerk's Papers (CP) at 109. It also imposed both mandatory and discretionary legal financial obligations (LFOs) without conducting an individualized inquiry into Mr. Bates's ability to pay. Mr. Bates appeals.

## ANALYSIS

### *I. Sixth Amendment confrontation right*

Mr. Bates's principal argument on appeal is that his United States constitutional Sixth Amendment confrontation right was violated when the court admitted S.J.'s

unsworn interview by Ms. Murstig without then questioning S.J. broadly enough to subject her to cross-examination. Unlike S.J.'s reports to family members, her recorded interview by the prosecutor's child investigator was testimonial, implicating his confrontation right. *See Ohio v. Clark*, ___ U.S. ___, 135 S. Ct. 2173, 2182, 192 L. Ed. 2d 306 (2015) (statements about abuse made to teachers were not testimonial, unlike such statements made to persons charged with uncovering and prosecuting criminal behavior). Confrontation clause violations are reviewed de novo. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012) (citing *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999)).

Citing *State v. Clark*, 139 Wn.2d 152, 159, 985 P.2d 377 (1999), Mr. Bates argues that under United States Supreme Court decisions in *United States v. Owens*[3] and *California v. Green*,[4] "'the admission of hearsay statements will not violate the confrontation clause if the hearsay declarant is a witness at trial, is asked about the event *and the hearsay statement*, and the defendant is provided an opportunity for full cross-examination.'" Br. of Appellant at 7-8. The emphasis, "*and the hearsay statement*," is Mr. Bates's, not *Clark*'s. He argues that because S.J. "was not asked about her hearsay statements, she did not concede having made any of the statements reported by Ms.

---

[3] 484 U.S. 554, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988).

[4] 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).

8

Murstig and thus she was not open to "'cross-examination at trial as to *both* stories.' [*Price*,] 158 Wn.2d at 640." *Id.* at 8. The emphasis of "*both*" is again Mr. Bates's, not *Price*'s.

*Clark* extended an analysis of the confrontation clause first announced by our Supreme Court in *Rohrich*. In *Rohrich*, which involved prosecution of the defendant for first degree child rape and first degree child molestation of his stepdaughter, the State called the stepdaughter to the stand as its first witness and asked her innocuous questions unrelated to alleged abuse. Defense counsel did not cross-examine her. After that, the State presented its evidence of abuse through other witnesses: four adults, who testified to what the victim had told them. The Supreme Court found both statutory and constitutional problems with this manner of proceeding.

We consider only the Court's confrontation clause analysis, since Mr. Bates raised no objection in the trial court to the State's offer of S.J.'s videotaped interview and any challenge based on the child hearsay exception was not preserved. RAP 2.5(a). A violation of the right to confront witnesses is constitutional error which, if manifest, we may consider for the first time on appeal. RAP 2.5(a)(3); *Clark*, 139 Wn.2d at 156.

In its confrontation clause analysis, the *Rohrich* court held:

The opportunity to cross-examine means more than affording the defendant the opportunity to hail the witness to court for examination. It requires the State to elicit the damaging testimony from the witness so the defendant may cross-examine if he so chooses. *Shaw v. Collins*, 5 F.3d 128, 132 n.7 (5th Cir. 1993). In this context "not only [must] the declarant have been

9

generally subject to cross-examination; he must also be subject to cross-examination concerning the out-of-court declaration." *United States v. West*, 670 F.2d 675, 687 (7th Cir.[ 1982]), [*overruled on other grounds by United States v. Green*, 285 F.3d 683 (7th Cir. 2001)]. The State's failure to adequately draw out testimony from the child witness before admitting the child's hearsay puts the defendant in "a constitutionally impermissible Catch-22" of calling the child for direct or waiving his confrontation rights. *Lowery v. Collins*, 996 F.2d 770, 771-72 (5th Cir. 1993).

132 Wn.2d at 478 (first alteration in original) (footnotes omitted).

Both of the Fifth Circuit decisions relied on in *Rohrich* offered the same reason

why the government's failure to adequately draw out an accuser's testimony created a

"constitutionally impermissible Catch-22." *Shaw* relied on *Lowery*:

Requiring a criminal defendant to examine his accuser during his case-in-chief rather than mandating that the prosecution call the witness during its case-in-chief places the defendant in a no-win situation. *Lowery v. Collins*, 988 F.2d 1364, 1369-70 (5th Cir. 1993). Such a requirement is inconsistent with the Confrontation Clause, for it requires the criminal defendant to either risk inflaming the jury by cross-examining the child-complainant or to avoid that risk by forgoing his Sixth Amendment rights to confront and cross-examine his accuser. *Id.* at 1369-1370.

*Shaw*, 5 F.3d at 132 n.7. *Lowery* observed in addition that forcing a criminal defendant to

call a child complainant to testify "unfairly requires a defendant to choose between his

right to cross-examine a complaining witness and his right to rely on the State's burden

of proof in a criminal case." 988 F.2d at 1368.

The Seventh Circuit case cited by *Rohrich* arose in the different context of Federal

Rules of Evidence 801(d)(1)(B). *West*, 670 F.2d at 686. The court held that if a witness

(Witness A) is impeached with a prior inconsistent statement suggesting recent

fabrication, then any prior *consistent* statement by Witness A offered to rebut the charge of recent fabrication must come in through Witness A, on redirect or as a rebuttal witness, in order to subject him or her to cross-examination. *Id.* at 687. Rejecting the views of other federal courts, the Seventh Circuit held that the prior consistent statement cannot be established by the testimony of a third party (Witness B). *Id.* In that context, *West* explains that it is not enough that Witness A had testified and was subject to cross-examination *sometime during trial*; he or she "must also be subject to cross-examination concerning the out-of-court declaration." *Id.*

At issue, then, is the scope of cross-examination and the State's burden of proof in a criminal case. To demonstrate a violation of the confrontation clause as construed by the Fifth Circuit Court of Appeals and our Supreme Court,[5] Mr. Bates must show that the State's presentation of evidence required him to forego cross-examination or to challenge S.J.'s allegations by calling her as a witness himself. To demonstrate *manifest* constitutional error, he must show how the error actually affected his rights at trial; it is this showing of actual prejudice that makes the error "manifest," allowing appellate review. *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).

---

[5] In *State v. Tompkins*, 859 N.W.2d 631, 640-41 (2015), the Iowa Supreme Court characterized our courts' view of this confrontation requirement as a minority view of *Crawford* and other controlling decisions of the United States Supreme Court.

11

Mr. Bates does not make this showing. To begin with, he *did* cross-examine S.J. about statements she had made to Ms. Murstig when interviewed. And the State did not object to the questions as outside the scope of its direct examination. He does not show that the State's conduct forced him to limit his cross-examination or to call S.J. as a witness.

In addition, given the State's extensive questioning of S.J. about Mr. Bates's offensive contact, it is hard to imagine any relevant questioning that would not have fallen within the scope of cross-examination if the State *had* tried to object on the basis of scope. ER 611(b) governs the scope of cross-examination, and provides:

> Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

Given the breadth of S.J.'s testimony about Mr. Bates's sexual contact with her, any relevant cross-examination based on her videotaped interview—including the couple of events she described in the interview that she omitted or denied later—would have fallen within ER 611(b)'s permitted scope.

Mr. Bates depends heavily on statements in several of our Supreme Court's decisions that the confrontation clause requires the State to question an accuser about the accuser's out-of-court statement admitted into evidence. But in each case, the scope of the accuser's direct examination was, or would have been, too limited to permit full

12

cross-examination without questioning about the prior statement. *Rohrich* quotes *West*'s statement that a declarant "'must . . . be subject to cross-examination concerning the out-of-court declaration,'" 132 Wn.2d at 478 (quoting *West*, 670 F.2d at 687), because the questioning of the stepdaughter in *Rohrich* was so narrow that it did not subject her to questioning about alleged abuse at all.

*Clark*, which discusses the United States Supreme Court decisions in *Green* and *Owens*, states that the admission of hearsay statements will not violate the confrontation clause if the hearsay declarant "is asked about the event and the hearsay statement," 139 Wn.2d at 159, but in *Clark*, *Green* and *Owens*, it was only the hearsay statement that was inculpatory. *Clark* and *Green* involved witnesses who recanted or backed away from a prior accusation and *Owens* involved a brain-injured witness who had lost his memory of an event by the time of trial. Unlike this case, in those cases it was *only* by questioning the witnesses at trial about their hearsay statements that the State would subject them to cross-examination about the damaging accusations admitted into evidence.

*Price* states that the confrontation clause does not require excluding the prior statement of a witness "'who concedes making the [out-of-court] statements'" and thereby "'open[s] himself to full cross-examination at trial as to both stories,'" but it is quoting *Green.* 158 Wn.2d at 640 (quoting *Green*, 399 U.S. at 164).

The language on which Mr. Bates relies applies in cases where the only way an accuser will be subjected to cross-examination about the damaging information contained

13

in an out-of-court statement is if the State's direct examination elicits the damaging information *from* that statement. This is not such a case.

Mr. Bates has not identified manifest constitutional error.

## *II. Ineffective assistance of counsel*

Mr. Bates's trial lawyer did not object when the State offered the videotape of Ms. Murstig's interview, but Mr. Bates is willing to excuse that failure to object in light of the State's "implicit intent to make S.J. available as a witness." Br. of Appellant at 11. But he argues on appeal that once the prosecutor concluded direct examination without asking S.J. about her statements to Ms. Murstig, "defense counsel provided ineffective assistance in failing to move for a mistrial." *Id.* To demonstrate ineffective assistance of counsel, a defendant must show that his trial lawyer's representation was deficient (i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances) and the deficient representation prejudiced the defendant (i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different). *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). The claim fails if the defendant fails to satisfy either prong. *Thomas*, 109 Wn. at 226.

Our conclusion in addressing Mr. Bates's first assignment of error was that he had not identified manifest constitutional error, but we might as easily have said that he had

14

not demonstrated any error—or any prejudice. As already discussed, the State did not raise a scope objection and cut off Mr. Bates's cross-examination. Its direct examination of S.J. was so broad that every subject matter of relevant cross-examination reflected in the record would fall within the scope of cross-examination. Mr. Bates did not perform ineffectively by failing to move for a mistrial.

We affirm Mr. Bates's convictions and remand for resentencing consistent with this opinion.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

### III. *Community custody condition*

Mr. Bates next argues that the trial court erred when it imposed a community custody condition prohibiting him from using a device to access the Internet because there is no evidence his crime was related to Internet access. "As part of any term of community custody, the court may order an offender to . . . comply with any crime-related prohibitions." RCW 9.94A.703(3)(f). A "crime-related prohibition" is an order that prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "'There must be some basis for the "crime-related" determination if the limitation is to have any meaning.'" *State v.*

15

*Parramore*, 53 Wn. App. 527, 531, 768 P.2d 530 (1989) (quoting DAVID BOERNER,

SENTENCING IN WASHINGTON § 4.5 (1985)).

Though Mr. Bates did not object to the condition at trial, challenges to community

custody conditions as illegal or erroneous may be made for the first time on appeal. *State*

*v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).[6]

The State concedes that the record does not support any inference of a nexus

between Mr. Bates's offenses and use of a computer or other access to the Internet. Br.

of Resp't at 8-9. We agree, accept the State's concession, and remand with directions to

strike the condition.

## *IV. LFOs*

Finally, Mr. Bates argues for the first time on appeal that the trial court erred when

it imposed LFOs without conducting an individualized inquiry into his ability to pay.

The State concedes that no individualized inquiry was made and that this was error. Br.

of Resp't at 9.

As a preliminary matter, we must consider whether to accept review of the issue.

Mr. Bates made no objection to the finding that he had the present or future ability to pay

---

[6] Mr. Bates is currently incarcerated and has not yet been charged with violating the challenged community custody condition. Considering the hardship to the parties that may result from withholding court consideration, and because the issue raised is primarily legal, does not require further factual development, and the challenged action is final, we find his challenge is ripe for review. *Bahl*, 164 Wn.2d at 751.

16

pay and thereby failed to preserve a claim of error. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015) ("[u]npreserved LFO errors do not command review as a matter of right"). But we enjoy discretion to consider the issue for the first time on appeal. RAP 2.5(a); *Blazina*, 182 Wn.2d at 835. Because the State concedes error and further action in the trial court is required, we exercise our discretion to review the claimed error.

Under RCW 10.01.160(3), "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them." "The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838. The record does not reflect any such inquiry in this case. We remand for resentencing at which Mr. Bates' ability to pay the $1,297.60 in discretionary LFOs shall be considered.[7]

### STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds for review (SAG), Mr. Bates raises two.

---

[7] Discretionary LFOs included a $60.00 sheriff's filing fee, $250.00 jury demand fee, $287.60 witness fee, and $700.00 in attorney fees. The $200.00 filing fee under RCW 36.18.020(2)(h) is mandatory. The discretionary or mandatory character of the jury demand fee remains unclear. *See State v. Clark*, No. 32839-2-III, slip op. at 4 (Wash. Ct. App. Sept. 8, 2016), https://www.courts.wa.gov/opinions/pdf/328392_pub.pdf.

*S.J.'s Credibility.* Having reviewed his copy of the transcript of proceedings, Mr. Bates identifies instances in which he characterizes S.J.'s testimony as incorrect or inconsistent, argues that those errors and inconsistencies bear on her credibility, and cites statutes from other states that he contends recognize the need to consider corroborating evidence in determining whether a child's testimony is trustworthy.

S.J.'s statements and testimony were sometimes inconsistent but were largely consistent, and she could very reasonably be found to be credible. We defer to the trial court's assessment of credibility in applying the child hearsay exception and to the jury's assessment in arriving at its verdict. *State v. Swan*, 114 Wn.2d 613, 667, 790 P.2d 610 (1990) ("Appellate courts . . . recognize . . . that the trial court is in the best position to make the decisions as to competency and credibility" in a hearing on the admission of child hearsay); *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 108, 864 P.2d 937 (1994) ("The credibility of witnesses . . . are matters within the province of the jury." (emphasis omitted) (quoting *Burke v. Pepsi-Cola Bottling Co.*, 64 Wn.2d 244, 246, 391 P.2d 194 (1964)).

*Ineffective Assistance of Counsel.* Mr. Bates alleges his trial lawyer provided ineffective assistance of counsel at trial in five instances; according to Mr. Bates, his lawyer (1) failed to obey a court order to send his ex-girlfriend's iPad to a forensic computer analyst (she was a defense witness and testified to matters she had reviewed on her iPad); (2) failed to visit the crime scene or employ an investigator; (3) failed to

18

investigate another suspect; (4) failed to obtain medical reports; and (5) failed to investigate and prepare for trial. SAG at 6-7. The record does not reveal that his trial lawyer failed to do any of these things. To the extent Mr. Bates's challenge depends upon facts outside the record of this appeal, his remedy is to seek relief by personal restraint petition. *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

Again, we affirm Mr. Bates's convictions and remand for resentencing consistent with this opinion.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, A.C.J.

19