IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36028-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SEAN M. HUDSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Sean Hudson appeals after his convictions for two counts of second degree theft, two counts of second degree identity theft, and one count of perjury. We reverse his theft convictions and remand those charges for a new trial, and affirm his identity theft convictions.

FACTS

Kimberly Goddard, a shopper at Walmart, left her wallet on top of a garbage can inside a Walmart bathroom. The wallet contained both her Wells Fargo debit card and a Banner Bank debit card belonging to her mother, Catherine Medlock.

Amanda Dummer discovered the wallet and removed the two debit cards. She went to Walmart's electronics department and used the Banner Bank card to purchase a

laptop. She then went to the grocery department and spoke to Sean Hudson, who worked in that department. Ms. Dummer and Mr. Hudson lived together and had a child in common.

The pair went to the electronics department where Mr. Hudson assisted Ms. Dummer in selecting a television and a PlayStation 4 video game console. The pair took the items to the checkout registers in the front of the store where they repeatedly attempted to use both stolen cards.

Several minutes earlier, Ms. Goddard noticed her wallet was missing and went back to the bathroom and found it. She noticed that both her and her mother's debit cards were missing. She contacted Walmart customer service to get assistance in canceling her cards. While they were assisting Ms. Goddard, Walmart's customer service discovered the charge on the Banner Bank card for the laptop Ms. Dummer had purchased. A review of the store's security footage revealed Ms. Dummer's and Mr. Hudson's activities as described above.

By the time the pair attempted to purchase the television and game console, both cards had been cancelled and the purchases were rejected. Mr. Hudson returned both items to the electronics department while Ms. Dummer waited at the front of the store.

Mr. Hudson then returned to the front of the store, met Ms. Dummer, and the pair left to smoke cigarettes in the parking lot.

After reviewing the security footage, Walmart loss prevention officer James Gibson went outside where he saw Mr. Hudson and Ms. Dummer smoking. Mr. Gibson approached the pair and asked Mr. Hudson if he could borrow a lighter. Mr. Gibson then asked Mr. Hudson who he was with. Mr. Hudson lied, stating that Ms. Dummer was a neighbor and that he did not know her name.

Following this, Walmart security contacted law enforcement, and Officer Chris Lorz began investigating. Officer Lorz interviewed Mr. Hudson and asked him a number of questions about Ms. Dummer. During the interview, Mr. Hudson continued to lie, stating at various times that Ms. Dummer's name was Stephanie, and giving a false address for her. Mr. Hudson was provided a statement form and he filled out a statement denying that the woman was Amanda Dummer and signed the form under penalty of perjury. After Officer Lorz confirmed that Mr. Hudson had lied during the interview, Mr. Hudson was placed under arrest.

The State charged Mr. Hudson with second degree perjury. In addition, the State charged Mr. Hudson as an accomplice with two counts of second degree theft and two

3

counts of second degree identity theft. The two counts for each crime were based on the theft and attempted use of the two debit cards.

As for the two theft charges, the State alleged that Mr. Hudson "wrongfully obtained or exerted unauthorized control over" Ms. Goddard's card and Ms. Medlock's card. Clerk's Papers (CP) at 1, 3; *see* RCW 9A.56.020(1)(a). The State did not allege any other alternative means for the theft charges.

The case went to trial and a jury heard the above evidence. The court instructed the jury on both second degree theft charges. The instructions defined theft as "(1)(a) wrongfully obtain[ing] or exert[ing] unauthorized control over property of another; or (b) appropriat[ing] lost or misdelivered property of another." CP at 25, 33.

The court also instructed the jury on both second degree identity theft charges. The separate instructions were identical and did not differentiate between Ms. Goddard's debit card and Ms. Medlock's debit card.

The jury found Mr. Hudson guilty of all five charges. The trial court calculated Mr. Hudson's offender score as a 6, including two Idaho convictions, one for forgery and the other for grand theft. Mr. Hudson acknowledged his two Idaho convictions, but did not agree that they were comparable to Washington offenses. The State did not submit evidence or argument that the Idaho crimes were comparable to Washington offenses.

4

Based on an offender score of 6, the court imposed a standard range sentence of 23

months. The court also imposed legal financial obligations, including a $200 criminal

filing fee, a $220 sheriff's service fee, and a $750 court-appointed attorney recoupment.

Mr. Hudson timely filed this appeal.

## ANALYSIS

Mr. Hudson raises four arguments on appeal. We address each argument in the

order raised.

1. ERROR BY INSTRUCTING ON AN UNCHARGED MEANS

It is error to instruct the jury on an uncharged means for committing a crime. *In re*

*Pers. Restraint of Brockie*, 178 Wn.2d 532, 536, 309 P.3d 498 (2013). Mr. Hudson

argues the trial court erred by instructing the jury on an uncharged means for committing

theft. The State concedes the trial court erred, but argues Mr. Hudson is precluded by the

doctrine of invited error from asserting this error on appeal.

A defendant may not propose an instruction, lose at trial, and then request a new

trial on the basis that the proposed instruction was erroneously given. *State v. Mercado*,

181 Wn. App. 624, 629-30, 326 P.3d 154 (2014). This is the doctrine of invited error. In

*Mercado*, we held that an invited error must be the result of "an affirmative, knowing,

and voluntary act." *Id.* at 630. We explained, "[t]he defendant must materially contribute

5

to the error challenged on appeal by engaging in some type of affirmative action through which he knowingly and voluntarily sets up the error." *Id.*

Here, the State provided Mr. Hudson with its proposed jury instructions. Mr. Hudson did not object to any of the State's proposed instructions, nor did he propose any of his own. The State argues Mr. Hudson's failure to object or propose his own instructions caused the instructions to be "joint instructions." It is irrelevant what term is used to describe the instructions. Mr. Hudson played a passive role in the process by which the trial court's instructions were prepared. Mr. Hudson's passive role is insufficient for applying the invited error doctrine.

We conclude the trial court erred in instructing the jury that it could consider an uncharged alternative to theft in the second degree. The error was not invited by Mr. Hudson. We reverse Mr. Hudson's two convictions for theft in the second degree and remand those counts for retrial.

2. IDENTICAL INSTRUCTIONS ON BOTH IDENTITY THEFT CHARGES

Mr. Hudson argues his right against double jeopardy was violated because the to-convict instructions for identity theft failed to distinguish whose card was used, thus permitting the jury to convict him twice for the same act. We disagree.

A claim of error raised for the first time on appeal will be reviewed if it involves a manifest error affecting a constitutional right. RAP 2.5(a)(3). Here, the right asserted by Mr. Hudson is of constitutional magnitude. The constitutional guaranty against double jeopardy protects a defendant against multiple punishments for the same offense. *State v. Noltie*, 116 Wn.2d 831, 848, 809 P.2d 190 (1991); *see* U.S. CONST. amend. V; WASH. CONST. art. I, § 9. An error is manifest if it actually affected the defendant's rights at trial. *State v. Bates*, 196 Wn. App. 65, 75, 383 P.3d 529 (2016). "[I]t is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." *Id.* We ultimately conclude the to-convict instructions for identity theft resulted in no actual prejudice to Mr. Hudson. Nevertheless, we exercise our discretion and review this claim of error.

We review double jeopardy claims de novo. *State v. Mutch*, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011). When reviewing issues of double jeopardy, the court may look to the full trial record. *Id.* at 664. However, review must be rigorous and "among the strictest." *Id.* The court must determine that it was "manifestly apparent" to the jury that the State was seeking separate punishments for separate acts. *Id.* If the court does not find this was manifestly apparent, the court must vacate the redundant conviction. *Id.*

In *Mutch*, the court explained that unclear jury instructions do not violate a defendant's right against double jeopardy if the record makes clear the State sought to punish the defendant for separate acts. *Id.* There, the defendant raped a woman five times over the course of a single night. After each episode, the defendant stopped for about one hour before assaulting the woman again. Between the fourth and fifth episode, the defendant slept in the woman's room, assaulting the woman again after he woke up. The State charged the defendant with five counts of rape in the second degree. At trial, the woman testified about the five separate attacks. The jury instructions given for each count were identical to one another, including giving the same time the attacks occurred—between "'the 2nd day of February, 1994 and the 3rd day of February, 1994.'" *Id.* at 662. The jury returned a guilty verdict on all five counts.

On appeal, the defendant argued that the five counts, being described identically in the instructions, meant there was the possibility the jury based each of its guilty verdicts on a single action. *Id.* The court held, despite the instructions for each count being identical, it was manifestly apparent to the jury that it must base its decision of each count on a separate act. *Id.* at 665. The court noted the woman had testified to five separate attacks individually, the same number as the number of counts of rape in the second degree that had been charged. *Id.* The court also pointed to the State's closing argument,

where the State mentioned the five separate attacks, and the number of attacks were not challenged by the defendant. *Id.*

*Mutch* is controlling. Mr. Hudson was charged with two counts of identity theft. The jury instruction for each count contained identical language and did not differentiate between Ms. Goddard's card and Ms. Medlock's card. Reviewing the whole record, however, it is clear that the State sought to punish Mr. Hudson for separate acts.

Ms. Goddard testified about the two cards that had been stolen from her wallet and described them as a red Wells Fargo card and a blue Banner Bank card. The jury also heard testimony of the two separate cards that were used by Ms. Dummer in her and Mr. Hudson's attempts to purchase merchandise.

Notably, the State argued in closing the two identity theft charges were based on the use of two separate cards owned by different people: "So again, identity theft in the second degree. Why—why the two counts? Because of the use of (inaudible) cards,—use of the two different persons' identities." Report of Proceedings (Mar. 23, 2018) at 184. Also similar to *Mutch*, Mr. Hudson did not challenge the number of cards that were used.

Finally, the identity theft instructions were arranged to follow the separate theft instructions, which did specify the owners of the two cards. The instructions were

9

grouped into theft of Ms. Goddard's Wells Fargo card and then identity theft, followed by theft of Ms. Medlock's Banner Bank card and then identity theft. The order of instructions, together with the testimonial evidence and the State's argument, made it manifestly apparent to the jury that the to-convict instructions on both identity theft charges were for the separate acts.

We conclude that the identical instructions for identify theft did not violate Mr. Hudson's right against double jeopardy.[1]

Affirmed in part, and reversed in part, and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____            _____
Korsmo, J.                                  Pennell, J.

---

[1] Mr. Hudson raises two additional issues. He argues the trial court erred in calculating his offender score and when imposing legal financial obligations. These issues are rendered moot because he will need to be resentenced. Nevertheless, we encourage the attorneys at the trial level to review the appellate briefing on these issues prior to resentencing.