# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1237-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

L.O.R.,

     Defendant-Appellant.

_____

        Submitted November 9, 2020 – Decided February 3, 2021

        Before Judges Fasciale and Rothstadt.

        On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 17-08-1179.

        Nathan Kittner, attorney for appellant.

        Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

In this appeal, we are asked to consider whether, in a sexual assault case, the admission of a child victim's Rule 803(c)(27) videotaped pretrial interview violated a defendant's Confrontation Clause rights when the recording was played for the jury after the child victim testified at trial and had been excused. For the reasons stated in this opinion, we conclude that the trial court did not err in applying Rule 803(c)(27) and that defendant's Confrontation Clause rights were not violated because he had an opportunity to conduct meaningful cross-examination of the victim at trial but chose not to do so.

A jury convicted defendant L.O.R.[1] of having committed one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), three counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b), and one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). The first-degree crime stated in the first count was based upon his ten-year-old stepdaughter's statement to police that defendant digitally penetrated her.

On appeal, defendant challenges his conviction and argues the following point:

---

[1] We use initials to protect the privacy of the victim and other family members. R. 1:38-3(c)(12).

THE TRIAL COUR[T] ERRED BY REFUSING TO DISMISS COUNT ONE OF INDICTMENT 17-08-01179-I FOLLOWING CONCLUSION OF THE TESTIMONY.

According to defendant, while his conviction on the first count was based upon a videotaped pretrial interview in which the child victim detailed his digital penetration of her, when she testified at trial, she denied that type of assault occurred. After she testified and left the courtroom, and with the trial court's prior permission, the State played the videotape for the jury in which the victim stated that defendant placed his fingers inside of her vagina. The taped statement was the only evidence of penetration.

Defendant contends that although at the time the victim testified his attorney had a copy of the transcript of the victim's videotaped statement that she could have used on cross-examination, the trial court's permitting the videotape to be played after the victim testified and left the courtroom violated his Confrontation Clause rights and warranted the dismissal of the indictment's first count. We disagree.

For our purposes, we need only briefly summarize the facts that led to defendant's arrest and conviction. In April 2017, the then-ten-year-old victim

3

A-1237-18T2

disclosed to a friend that defendant, who lived with her, her mother and other family members, had sexually assaulted her. That disclosure led to the police being contacted and the Bergen County Prosecutor's Office (BCPO) initiating an investigation that led it to conclude defendant had been sexually assaulting the victim from January 2015 through April 3, 2017.

During a videotaped interview conducted by BCPO Detective Melissa Cullen on April 5, 2017, the victim told Cullen about one incident of sexual abuse that occurred in January 2017 while her mother was out attending to the laundry. The victim explained that while at home with defendant, he asked her to come downstairs into her mother's bedroom to watch a movie. She specifically stated that once she and defendant were laying down watching a movie, defendant proceeded to touch her underneath her clothes, then on top of her vagina, before digitally penetrating her with two fingers.

Defendant was arrested and charged in an indictment with the offenses that the jury convicted him of committing. Prior to his trial, the court conducted a Rule 104 hearing in response to the State's motions to admit fresh complaint testimony and the video of the victim's statement under Rule 803(c)(27). At the conclusion of the hearing, the trial court ruled that the video was admissible and could be played by the State in its case-in-chief so long as the victim testified at

trial. The court stated that "the child ha[d] to testify before" the videotaped statement could be used at trial.

At the beginning of defendant's trial, he requested that the victim's video statement be played for the jury while she was still on the witness stand. Defense counsel acknowledged she was in possession of a transcript of the interview, but argued that if the video was played after the victim testified and had been excused from the witness stand, defendant "would be effectively prevented from cross-examining [the victim] about her video statement and would therefore be prevented from conducting full and comprehensive cross-examination in front of the jury," essentially "eliminating" defendant's ability to cross-examine her as to her statements.

The trial court was not persuaded and ruled that, consistent with its Rule 104 hearing determination, the State would be permitted to play the video statement during its case-in-chief at a point in the State's discretion so long as the victim testified first. The court did not discern any prejudice to defendant and was satisfied that "defendant's right of confrontation [was] protected" "because the defendant has the statement, has the video of the statement and has the transcript of the statement."

During her direct examination at trial, the victim testified to various instances of sexual assault that occurred from 2015 to 2017 that involved defendant touching her "on top" of her vagina and defendant taking her hand, putting it inside his pants, and forcing her to touch his penis. Turning to the January 2017 incident, the prosecutor asked, "When you said the defendant touched your vagina, was it outside, inside, or something else?" to which she responded, "It was on top." The prosecutor then asked, "At any point did the defendant touch the inside of your vagina?" to which she responded, "No."

Following the conclusion of her testimony on direct, defense counsel cross-examined the victim for over an hour. The cross-examination did not address the inconsistency between the victim's testimony at trial and in the videotaped statement about digital penetration, but defense counsel used the transcript from the earlier statement to question the victim about other inconsistencies. On redirect, the victim reiterated that defendant used his fingers to touch her but did not mention any penetration. Afterward, following a brief recross examination, the court excused the victim from the courtroom. Defendant never asked to recall the victim as a witness.

After the victim left, defendant immediately moved to bar the videotape from being played because the victim's testimony contradicted her videotaped

statement, and without the testimony at trial, there was no support for the first-degree charge that was based on digital penetration. The trial court denied the application because defense counsel had seen the videotape and had the transcript, and therefore had an adequate opportunity to cross-examine the victim about her statements before the tape was played but chose not to question the victim. Later in the trial, the court also explained that the videotaped statement was, as it previously ruled, admissible as substantive evidence under Rule 803(c)(27), and there was no authority to support barring its admission simply because it contained statements made at an earlier time that were inconsistent with the victim's trial testimony.

On July 20, 2018, defendant filed a letter brief with the court that argued for the dismissal of count one of the indictment. Four days later, after the conclusion of the testimony but prior to counsels' closing statements, defense counsel renewed defendant's motion for judgment of acquittal under Rule 3:18-1 to dismiss all counts against defendant and specifically urging that the first count alleging aggravated sexual assault be dismissed on the basis that admitting the video tape, the only evidence of guilt under count one, violated defendant's Confrontation Clause rights. Defendant contended that by permitting the State to play the videotape after the victim had been excused as a witness, and by

7

concluding that defense counsel had adequate opportunity to cross-examine defendant because defense counsel had access to the video and transcript of the statement, the trial court effectively forced defense counsel to "choose whether to elicit damaging testimony from [the victim] which was not presented in her direct examination," or otherwise require her to "call [the victim] as a defense witness, thereby shifting the burden of proof to the defendant to call a hostile witness to prove that the events set forth in Count One of the Indictment did not occur." The trial court denied the application for the same reasons it had stated in response to defendant's earlier applications.

Later, in her summation to the jury, defense counsel relied upon the inconsistencies in the victim's statement and testimony to undermine her credibility with the jury. She specifically compared the victim's allegation in her video statement that defendant had digitally penetrated her with her testimony at trial and argued that the victim had given "completely contradictory and irreconcilable statements regarding digital penetration."

The next day the jury convicted defendant of all charges stated in the indictment. Later, the trial court sentenced defendant to an aggregate term of 40 years of imprisonment, subject to a mandatory period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2.

A-1237-18T2

On November 6, 2018, defense counsel filed a motion to have the trial court conduct a hearing to question a juror who had served as an alternate and had been contacting the court after the trial to obtain the name and contact information of defense counsel. On December 14, 2018, the court held a hearing where the juror testified that he personally did not think that defendant was guilty, and that he had heard the other jurors state that they "based the[ir] decision on whether [the victim] changed her testimony or not and did[ not] pay attention to anything else." When the court asked the juror whether he had gotten any indication that the deliberating jurors had considered evidence that they were not supposed to consider, the juror answered, "No." Based on the juror's answer, the trial court found that there was no "need for any follow up." This appeal followed.

On appeal, defendant contends that the trial court should have reconsidered its earlier ruling admitting the videotaped interview into evidence after the victim testified in court inconsistently with what she said in the interview, and it should have dismissed the indictment's first count. We disagree.

Our review of a trial court's evidentiary rulings is limited. We will not overturn a trial court's evidentiary rulings unless it is clear that the court

9

palpably abused its discretion. State v. R.Y., 242 N.J. 48, 64-65 (2020). "[A]n abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 65 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). In other words, the trial court's rulings on evidentiary matters will not be set aside unless we are "convinced that 'the trial court's ruling is so wide of the mark that a manifest denial of justice resulted.'" State v. Prall, 231 N.J. 567, 580 (2018) (quoting State v. J.A.C., 210 N.J. 281, 295 (2012)).

We review the constitutional implications of the trial court's evidentiary rulings for errors of law. State v. Sims, __ N.J. Super. __, __ (App. Div. 2021) (slip op. at 29) (citing State v. McInerney, 450 N.J. Super. 509, 512 (App. Div. 2017)). Deference will not be afforded if the trial court has misapplied the law to an evidentiary issue. See State v. Hathaway, 222 N.J. 453, 467 (2015).

Under Rule 803(c)(27), an out-of-court video statement made by a child victim is generally admissible if the trial court determines in advance that (1) the proponent of evidence gave notice to the opponent of the intent to use the evidence, (2) the court determined at a Rule 104 hearing that the video statement was trustworthy under the totality of the circumstances, and (3) the child was present to testify at trial.

When making a determination under the Rule's second requirement about the reliability of a statement, a court must consider "the totality of the circumstances." State in interest of A.R., 234 N.J. 82, 103 (2018) (quoting State v. P.S., 202 N.J. 232, 249 (2010)). In doing so, the court considers "a non-exclusive list of factors relevant to evaluating the reliability of out-of-court statements made by child victims of sexual abuse, including spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate." Ibid. (emphasis omitted) (quoting P.S., 202 N.J. at 249). Consistency in the victim's statement is therefore only one factor in the "non-exclusive" list of factors to be considered in determining reliability.

At the Rule 104 hearing in this case, the trial court considered the "time, content, and circumstances" of the victim's statement to determine its trustworthiness. The court found that the statement was trustworthy because the victim's "initial disclosure of the abuse . . . was spontaneous [and] not in response to questioning"; she had "consistently maintained the[] allegations"; her "mental state at the time she gave the statement was calm and collected"; "her use of terminology during the interview was that expected of a 10-year-old"; "she ha[d] no motive to fabricate, and the [detective] to whom she gave a

statement was . . . not a person to whom a 10-year-old would lie"; and the "comfortable setting" and "serious tone" of the interview established a setting that was "likely to elicit truthfulness."

Addressing the interviewer, the trial court noted that Cullen did not ask the victim leading questions on critical issues and that there was no issue with "incessant questioning." The court also noted that the "descriptions of the events were extremely detailed . . . indicating that the statement itself is reliable." On these bases, the trial court ruled that, under the totality of the circumstances, the statement was reliable and could be presented by the State, so long as the victim testified at trial.

Here, defendant does not challenge the trial court's original ruling. Rather, he argues that the victim's failure at trial to corroborate her earlier statement undermined the second requirement under Rule 803(c)(27) which warranted the tape not being admitted into evidence and played for the jury and, by extension, the dismissal of the indictment's first count for a lack of supporting evidence. We find no merit to his argument.

Contrary to defendant's contention, a child victim's in-court testimony that contradicts an earlier out-of-court statement does not require that the 803(c)(27) statement be barred from admission. See State v. Nyhammer, 197 N.J. 383, 410-

11 (2009). In <u>Nyhammer</u>, the Court explained that even if a child could not recall or corroborate what the child had previously reported, the prior out-of-court statement was still admissible as long as the criteria of N.J.R.E. 803(c)(27) continued to be met. <u>Id.</u> at 410-15.

Nevertheless, a trial court remains free to revisit the issue of reliability after considering the victim's testimony at trial. <u>See</u> <u>State v. Smith</u>, 158 N.J. 376, 389 (1999) (noting that the trial court's decision to reserve judgment on reliability until hearing testimony at trial allowed it to "compare key factors such as the spontaneity and consistency of the child's responses to questions and the language or terminology used by the child."). But, inconsistent testimony at trial does not necessarily impugn the reliability of an initial out-of-court statement. <u>See</u> <u>State v. D.R.</u>, 109 N.J. 348, 360 (1988) (noting that a child's testimony "is often affected by the stress of the courtroom experience, the presence of the defendant . . . the prosecutor's need to resort to leading questions [and t]he lapse of time between the sexual assault and the trial" and that "[i]n cases where the accused is a member of the child's family or household, the victim may be urged or coerced to recant."); <u>State v. Burr</u>, 392 N.J. Super. 538, 565-66 (App. Div. 2007), <u>aff'd as modified on other grounds</u>, 195 N.J. 119 (2008).

Under these circumstances, we conclude that the trial court did not abuse its discretion in admitting the child victim's interview even though her trial testimony was not consistent with her earlier out-of-court statement. The discrepancies in the live testimony and the videotaped testimony were not a reason to find the videotaped statement untrustworthy as a matter of law. The problems often encountered by young children in testifying in court are exactly the reasons why Rule 803(c)(27) was enacted in accordance with what the Supreme Court proposed in D.R., 109 N.J. at 371-77, in response to a "need for a more liberal rule of admissibility with respect to out-of-court statements of young sexual abuse victims." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 2 on N.J.R.E. 803(c)(27) (2020).

Discrepancies between an out-of-court statement and live testimony can be, as defense counsel did here, argued to the jury as bearing upon the victim's credibility. They do not control the analysis of the totality of the circumstances to be made by the judge in evaluating whether the out-of-court statement was sufficiently trustworthy. To accept that as a valid and conclusive consideration would, in effect, defeat the purpose of relaxing the hearsay rule in child sexual abuse cases.

14

We also conclude that the trial court's decision to allow the videotaped interview to be played after the victim completed her testimony was not an abuse of discretion as it did not violate defendant's Confrontation Clause rights. "[T]he Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution provide that the accused in a criminal prosecution has the right 'to be confronted with the witnesses against him.'" State v. Cabbell, 207 N.J. 311, 328 (2011); U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. The federal and state constitutional provisions "express a clear preference for the taking of testimony subject to cross-examination." Cabbell, 207 N.J. at 328.

The Confrontation Clause provides a defendant with "the opportunity to cross-examine and impeach the State's witnesses." State v. Williams, 184 N.J. 432, 443 (2005); see also State v. Budis, 125 N.J. 519, 530-31 (1991) ("Among the primary interests protected by the right of confrontation are the opportunity for defendants to face their accusers and to cross-examine the state's witnesses."). The right to confront and cross-examine accusing witnesses is "among the minimum essentials of a fair trial." Budis, 125 N.J. at 531 (quoting Chambers v. Mississippi, 410 U.S. 284, 294-95 (1973)). Although trial courts have wide latitude to impose reasonable limits on cross-examination, the "denial

or significant diminution [of cross-examination] calls into question the ultimate integrity of the fact-finding process." Id. at 532. The Confrontation Clause operates to prohibit a party from introducing testimonial hearsay "as a substitute for in-court testimony when a defendant has never been given the opportunity to cross-examine the witness." Cabbell, 207 N.J. at 329.

"Testimonial" statements are statements "in which witnesses 'bear testimony' against the accused, and include certain statements that are the product of police interrogation." Ibid. (quoting Crawford v. Washington, 541 U.S. 36, 51 (2004)). "The [Confrontation] Clause does not bar admission of a statement so long as the [witness] is present at trial to defend or explain it." Crawford, 541 U.S. at 68. "However, if the witness is absent from trial, a testimonial statement is only admissible if that witness 'is unavailable, and only where the defendant has had a prior opportunity to cross-examine.'" Cabbell, 207 N.J. at 329-30 (quoting Crawford, 541 U.S. at 59).

Our research disclosed only one New Jersey reported case, Burr, that addressed an issue similar to that raised by defendant here—that playing the recording after the witness was excused violated his Confrontation Clause rights. 392 N.J. Super 538. Burr involved the defendant's sexual abuse of a child, wherein the defendant similarly contested the State's admission of a video

16

statement during the testimony of a witness after the declarant-victim had already been excused. Id. at 565. There, as here, the court considered the defendant's argument that his right to confrontation was violated because the victim was only cross-examined on her in-court testimony, not on the contents of her out-of-court video statement recorded by law enforcement prior to trial. Id. at 566-69. In Burr, we concluded that the defendant's right to confrontation could not have been violated because the victim's out-of-court statement was entirely consistent with her in-court testimony. Id. at 568-69.

Other state courts have considered the issue under similar circumstances and most have concluded that a defendant's Confrontation Clause rights were not violated.[2] For example, in State v. Tompkins, 859 N.W.2d 631 (Iowa 2015),

---

[2]  A minority of jurisdictions have held—as defendant urges here—that putting the defendant in a position where he must "call a child complainant to testify 'unfairly requires a defendant to choose between his right to cross-examine a complaining witness and his right to rely on the State's burden of proof in a criminal case.'"  State v. Bates, 383 P.3d 529, 534 (Wash. Ct. App. 2016) (quoting Lowery v. Collins, 988 F.2d 1364, 1368 (5th Cir. 1993)).  Under the minority approach, a violation of the Confrontation Clause is established where a defendant shows that "the State's presentation of evidence require[s a defendant] to forego cross-examination or to challenge [the victim's] allegations by calling [the victim] as a witness himself." Id. at 534; State v. Rohrich, 939 P.2d 697 (Wash. 1997) (en banc) (holding that the Confrontation Clause "requires the State to elicit the damaging testimony from the witness so the defendant may cross-examine if he so chooses" and noting that "[t]he State's failure to adequately draw out testimony from [a witness] before admitting the

the court addressed almost the exact argument being made by defendant, but in the context of a defendant arguing he could not cross-examine a witness about a prior out-of-court statement because the prosecutor did not ask any questions on direct about the earlier statement. Id. at 639-40. Moreover, the defendant claimed "he could not recall [the witness] to confront her on her hearsay statements because he was placed in a constitutionally impermissible catch-22: forego either his Confrontation Clause rights or his right to have the State prove its case against him." Id. at 640.

The Tompkins court disagreed with the defendant's contention and explained the following:

> We agree with [defendant] that the State's decision not to question [the witness] about the statements she made to [police], or the events surrounding the night in

---

[witness's] hearsay puts the defendant in 'a constitutionally impermissible Catch-22' of calling the child for direct or waiving his confrontation rights" (quoting Lowery v. Collins, 996 F.2d 770, 772 (5th Cir. 1993))).

In justifying this preference for in-court child witness testimony, the Rohrich court suggested that "nothing about child hearsay indicates the hearsay statement would be more reliable than an in-court declaration of the same accusation." Rohrich, 939 P.2d at 702. As noted above, our Supreme Court has suggested exactly the opposite. See D.R., 109 N.J. at 360 (listing a number of reasons why a child's in-court testimony may be less reliable than a prior testimonial statement). Because of this distinction, and because our opinion in Burr supports the proposition that the Confrontation Clause is not per se violated as a result of this unique trial procedure so long as the child victim testifies and is subjected to cross-examination, we decline to follow the minority approach.

> question, placed [defendant] in the unenviable position to weigh the advantages and disadvantages of cross-examining [the witness] during her initial testimony or calling her as a witness for the defense. However, [defendant]'s Confrontation Clause rights were not violated based on this choice. The choice whether and to what extent to cross-examine a witness always requires a cost-benefit analysis. But where the witness takes the stand and is available for cross-examination, the Confrontation Clause places no constraints on the use of the witness's prior testimonial hearsay statement. Crawford, 541 U.S. at 59 n.9.
>
> [Ibid.]

In reaching its conclusion that no violation occurred, the Tompkins court relied on the fact that the witness "was available for cross-examination" and remained an available witness had the defendant wished to recall her. Ibid. The court also relied on the court's evidence rules, which provided for a trial court to allow cross-examination beyond the scope of direct in its discretion and, if an out-of-court statement was otherwise admitted, permitted the party against whom it was used to call the witness and question them as if under cross-examination. Ibid. The court found further support in its canvass of court decisions from other jurisdictions wherein it concluded that "the majority of courts from other jurisdictions that have addressed this issue have reached similar conclusions." Id. at 640-41 (discussing sixteen opinions from state and federal courts).

19

In <u>State v. Pollock</u>, 284 P.3d 1222 (Or. Ct. App. 2012), <u>review denied,</u> 298 P.3d 30 (Or. 2013), one of the cases cited by the <u>Tompkins</u> court, an appellate court in Oregon considered facts nearly identical to those presented in the case before us. 284 P.3d at 1222–23. There, after a three-year-old child victim told her mother details of her sexual assault without being prompted, the mother contacted police who conducted an interview with the child which was recorded on DVD. <u>Ibid.</u>

At trial, the State called the victim—then five years old—who was not asked about the specific abuse but was asked whether she remembered making statements to the police and whether those statements were true, to both of which she answered in the affirmative. <u>Id.</u> at 1223. Defense counsel also questioned the victim briefly about whether she remembered making the statements in the DVD and whether she talked with her mother or police about the topics covered in the DVD—to which she again answered in the affirmative. <u>Id.</u> at 1223.

After the witness was excused, the State called the victim's interviewer and offered the DVD of the interview into evidence. <u>Ibid.</u> The court permitted the State to play the DVD for the jury at the close of its case-in-chief over defendant's objections that his Confrontation Clause rights were being violated. <u>Ibid.</u>

On appeal, the defendant contended that he "did not have an adequate opportunity to cross-examine the victim about her out-of-court statements, because she was, in effect, 'unavailable' for cross-examination on the inculpatory evidence, due to the prosecutor's failure to have elicited that evidence directly from the victim before introducing the DVD." Id. at 1224. He further argued that, because the prosecutor did not elicit the testimony from the DVD on direct examination, "the prosecutor effectively placed on defendant the burden to elicit the inculpatory testimony that he sought to impeach, a burden that he contend[ed] violated his right to confrontation." Ibid.

The Pollock court found that no right to confrontation had been violated for a number of reasons: the victim had taken the stand and was subject to cross-examination, the defense had adequate opportunity to cross-examine the victim about her statements on the DVD because she affirmed and adopted her prior statements while on the stand, the defendant did cross-examine the victim, and the defendant chose not to recall the victim for cross-examination even though he could have after the prosecutor played the DVD. Ibid. Rejecting the defendant's confrontation argument, the Pollock court stated, "Although we agree . . . that the state's decision not to question the victim in detail about the statements . . . placed on defendant the burden to weigh the advantages and

21

disadvantages of cross-examining the victim specifically about her statements, we conclude that the [S]tate's tactical decision did not limit defendant's right to confrontation." Ibid.

Here, like in Pollock, defendant had an opportunity to cross-examine the child-victim but he chose not to ask questions about her out-of-court statement even though he had a transcript of the videotaped statement. Moreover, defendant was not prohibited under our Rules of Evidence from seeking permission to examine her about her out-of-court statement. See N.J.R.E. 611(b) ("The court may allow inquiry [on cross-examination] into additional matters as if on direct examination."). Nor was he prohibited from seeking to recall the victim as a witness after the tape was played. See N.J.R.E. 806 ("If the party against whom a hearsay statement has been admitted calls the declarant as a witness, that party is entitled to examine the declarant on the statement as if under cross-examination.").

Defendant, for what was evidently strategic purposes, simply chose not to cross-examine the victim while knowing that the videotape would be played after she testified. The simple fact that the victim's prior statement was inconsistent with her testimony on direct examination does not constitute a violation of defendant's confrontation rights where our Rules, like those in

Tompkins and Pollock, provided defendant ample opportunity to address those inconsistencies during cross-examination or following the presentation of her video statement. See Crawford, 541 U.S. at 59 n.9 (The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it). What occurred here was not a violation of defendant's Confrontation Clause rights, but rather a strategic decision made by defendant to not address the victim's earlier statement.

Under these circumstances we conclude from our de novo review of the evidence, see State v. Williams, 218 N.J. 576, 593-94 (2014), that the trial court did not err when it refused to dismiss the first count of the indictment as the victim's videotaped statement provided sufficient evidence to sustain defendant's conviction on that count. See State v. Tindell, 417 N.J. Super. 530, 549 (App. Div. 2011) (applying the same de novo standard of review to motions to dismiss under Rule 3:18-1 and Rule 3:18-2 to determine if there was sufficient evidence "such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged" (quoting State v. D.A., 191 N.J. 158, 163 (2007))); see also State v. Reyes, 50 N.J. 454, 458-59 (1967).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23                                              A-1237-18T2